## BARRON *v.* EASTON *et al.*

When a party has two remedies given by the law, he has his election, and cannot be compelled to take either one.

Thus, on title bonds, or contracts to convey land, the party generally has a right to an action for damages for non-performance, or to a bill in chancery, to compel a specific performance; and he cannot be *driven* to take the action for damages.

O. M. B., being the warrantee of land warrant No. 10,215, sold it to E., who sent it, with others, to M., to be located on contract. On the 23d of March, 1852, M. entered into an agreement with T. F. B., and at his request, located the warrant on the southeast quarter of section five, in township 79, north of range 43, and gave T. F. B. a bond, in M.'s own name, covenanting to make, or procure to be made, a deed for the premises, and reciting that T. F. B. had executed his note to E. for the payment of the warrant. On the 20th of September, 1852, the warrant being then located, O. M. B. executed to E. a title bond for the said premises, running to him, his executors, administrators, and assigns, covenanting to convey the said land on or before the 12th of June, 1853, provided E. should, on or before that day, pay said O. M. B. the sum of $160.00. Before the day of payment, O. M. B. died, and there was no administrator, nor any one to whom to pay the money, until after the debt became due, when H. was appointed administrator. After this, T. F. B., not knowing that the legal title to the land was in O. M. B., but supposing it to be in E., filed his bill against E. for a specific performance of the contract to convey, made by M., and in October, 1854, the District Court of Scott county, rendered a decree in his favor against E. for

the conveyance of the land. T. F. B. afterwards, August 21, 1855, filed his bill in the same court against E. and the heirs and administrator of O. M. B., praying for the specific performance of the contract between O. M. B. and E., alleging a tender of the money due to H., the administrator, and that the money due E. had been paid into court, and remained in the hands of the clerk; and praying that H. and the heirs of O. M. B. may be decreed to convey the premises to the petitioner, and that the money paid into court for E. may be decreed to be paid to H. in discharge of the obligation under the bond from O. M. B. to E. To this bill there was a demurrer, which was overruled by the court.

*Held*, 1. That under the decree against E., T. F. B. stands in the place of E., and can claim a performance of the contract between O. M. B. and E.

2. That the covenants in the bond from O. M. B. to E. were mutual and dependent, and neither is strictly a condition precedent.

3. That the payment of the money on the part of E. was prevented by the death of O. M. B., and this being the act of God, saved the forfeiture.

4. That the demurrer was properly overruled.

## *Appeal from the Scott District Court.*

ON the 21st of August, 1855, Barron filed his bill in equity in the District Court in Scott county, against Eliphalet Easton, William Hall, administrator of Ora M. Burke, deceased, Albert G. Burke, Charles Smith and Eliza, his wife, formerly Eliza Burke, and Ann and Howard Burke, minors, praying for the specific performance of a contract for the conveyance of the southeast quarter of section five, township seventy-nine north, range four east, which was located by military bounty land warrant number 10,215. The bill alleges that O. M. Burke, being the warrantee of this warrant, sold it to Easton: that on 20th September, 1852, the said warrant being then located on the foregoing land, he gave to Easton a title bond, running to him, his executors, administrators, and assigns, covenanting to convey the said tract of land on or before the 12th day of June, 1853, provided said Easton should, on or before that day, pay him the sum of one hundred and sixty dollars, the price agreed; that before that time, Burke died, and there was no administrator, nor any one to whom to pay the money, until some time after, when the said Hall was appointed administrator; that on the 17th day of February, 1852, before the warrant was located, Easton, who had purchased it,

sent it with others to J. W. McCaddon, with a request that he would locate them forthwith, and try to have them located on contract; that on the 23d day of March, 1852, McCaddon entered into an agreement with Barron, located the warrant on this land, at his request, as is understood, and gave him (Barron) a bond in his own name, covenanting to make or procure a deed; but reciting in the bond, that Barron had given his note to Easton for the payment of the money. After this, Barron filed his bill against Easton for a specific performance of his contract, and such proceedings were had in the cause, that in October, 1854, in the District Court in Scott county, he obtained a decree for a specific performance against Easton. At this time Barron did not know, as he avers, that the legal title was still in Burke, but supposed it to be in Easton. The bill alleges that a tender of the money due was made to Hall, the administrator, and also that the money due Easton had been paid into court, and remains in the clerk's hands. The bill then prays that the said administrator, and the said heirs, may be ordered to make a conveyance of the said land to the petitioner, and that the money paid into court for said Easton, under the decree against him, or so much thereof as may be necessary, be decreed to be paid to the said administrator, in discharge of the obligation under the bond from Burke to Easton.

To this bill the defendants (except Easton, who makes default) demur, upon the following grounds:

*First.* That there is no equity shown; for that it is brought to enforce a contract upon a bond given by Burke to Easton, his administrators or assignees; and that complainant does not allege that he is an administrator or assignee; and that it appears that there is no privity between the petitioner and the defendants.

*Second.* That complainant has a full remedy at law.

*Third.* That Easton made no contract to convey the land to complainant.

The demurrer was overruled, and the respondents appeal.

*D. L. Shoray,* for the appellants.

*Whitaker & Grant*, for the appellees.

WOODWARD, J.—The errors assigned are based upon the matter of the demurrer. The first and third grounds of demurrer amount to the same thing. As to the second ground, that complainant has a complete remedy at law, nothing is said to explain this, and show the meaning of the party or his counsel. But it is presumed he means, an action for damages on the bond. It is sufficient to say, that when a party has two remedies given by law, he has his election, and cannot be compelled to take either one. Thus, on title bonds, or contracts to convey land, the party generally has a right to an action for damages for non-performance, or to a bill in chancery, to compel performance. And he cannot be *driven* to take the action for damages.

The other grounds of demurrer resolve themselves into the one, that there is no privity between complainant and Burke, or his representatives. We will not undertake to say that the doctrine of priority of contract scarcely holds among us now; but certain it is, that its applicability is much less frequent under our law, than at common law. Our statute makes nearly every kind of contract assignable, so as to permit the assignee to maintain an action in his own name, saving of course, the right of the obligor in respect to defence and set-off. This alone might, perhaps, cover the objection, but we do not stop to discuss the matter closely. It is here said further, that Easton made no contract with Barron. This alludes to the fact, that McCaddon executed the bond to complainant. In some manner of treating the subject, we would not omit to notice Easton's letter to Mc-Caddon, and that the bond of the latter recites that Barron had given his note *to Easton*. But the decree recovered by Barron against Easton, covers all this matter. It has been decreed by a competent court, that Easton did contract with Barron, and that he convey the land to him. In the actual state of the case, the title still being in Burke, this amounts to a decree that he convey all his right, title, and interest. Thus there has been an assignment of the contract by judg-

ment, if not otherwise; and Barron stands in the place of Easton, and can claim a performance of the contract. This view covers some of the points made in the argument, under the general objection, made in the demurrer, and they need not be noticed in detail.

But it is urged that Burke's agreement was upon a condition precedent, which Easton has not performed. The covenants are mutual and dependent, and neither is strictly a condition precedent. · It is true, that Easton could not claim a deed until he paid the money; but neither could Burke sue for the money, without tendering a deed. Burke might be still with safety, till Easton performed, whilst Easton must do something, in order to bring into being his right to claim a deed; but this does not make it properly a condition precedent. But, however this may be in strict correctness, the performance of the act on the part of Easton, or his assignee, was prevented by the act of God in the death of Burke; and then, as soon as an administrator is appointed, the money is tendered. According to the commonly accepted rules of law, this saves the forfeiture.

The decree is affirmed.