DAVIS and others *v.* McCREADY and others.

The breach of an executory contract which formed the consideration for the acceptance of a bill of exchange, is not a defence in whole or in part against indorsees who took the bill for value, with notice of the contract but without notice of a breach.

APPEAL from a judgment of the New-York Common Pleas. The action was upon a bill of exchange: indorsees against acceptors. The bill was drawn by an agent of the

Davis *v.* McCready.

defendants for part of the price of a brig, purchased by him as such agent, at Norfolk in Virginia. At the time of the purchase the brig was undergoing repairs at Norfolk, and the vendors to whom the bill was given agreed as a part of the bargain that they would complete them and make the vessel tight, staunch and strong in every respect and perfectly seaworthy. The defence was that this agreement had not been performed. The repairs were imperfectly done. The defendants' agent however, loaded the brig and sent her to sea on a voyage to New-York, but she leaked badly, the cargo was damaged and she had to be repaired in New-York. The purchase was made and the bill drawn on the 4th of October, 1853. It was at six months and was sent to New-York where the defendants reside, for acceptance and returned accepted, after which the bill of sale of the brig was delivered. She sailed for New-York on the twenty-third of October, and on the twenty-ninth of the same month the payees enclosed the bill to the plaintiffs. The defendants claimed that there was a failure of consideration, and also that they had a right to recoup the damages sustained by them for the breach of contract in this action. Their answer set up that the plaintiffs were not *bona fide* holders.

The referee before whom the action was tried found the existence of the agreement above mentioned and the breach. He also found that the plaintiffs paid full value for the bill; that they took it however with a knowledge of the consideration and of the agreement respecting repairs, but without a knowledge of a breach of that agreement on the part of the vendors. He reported against the defendants for the amount of the bill, and judgment was entered accordingly. There were some exceptions taken in the course of the trial, which are mentioned in the opinion. The defendants appealed. The case was submitted upon printed points.

*John Raymond,* for the appellants.

*John Sessions,* for the respondents.

DENIO, J.    The sale of the brig and the executory agree-ment of the vendors to make the necessary repairs to render her seaworthy formed a good legal consideration for the acceptance of the bill.    When, therefore, the plaintiffs at the time of receiving it were informed that it was accepted on that consideration, they were not notified of any fact which impeached its validity or rendered it in any respect suspi-cious.    If they had known nothing of the consideration upon which it was given they would nevertheless have been *bona fide* holders, and they are not in a worse condition because they had been informed that it was accepted on account of a transaction legal in itself, and which formed an adequate consideration for the undertaking of the accept-ance.    Considerations founded upon reciprocal promises of the parties are of common occurrence in business, and bills and notes supported by such considerations have always been held valid.    It is upon this principle that cross notes or acceptances for mutual accommodation have been upheld whenever they have come before the courts. (*Cameron* v. *Chappell*, 24 *Wend.*, 94, *and cases cited by* NELSON, J.; *Dowe* v. *Schutt*, 2 *Denio*, 621.)    In the first of these cases the acceptance sued on was given in consideration of a promise by the drawer to send the acceptor six hundred bushels of wheat at the opening of navigation the ensuing year.    The bill became payable the twelfth of May, after the time when the wheat should have been delivered, and it was shown it never had been delivered.    The court held that the accept-ance was not for accommodation, but was business paper, and was valid in the hands of the drawer, so that usury could not be set up against the plaintiffs, who had dis-counted it for a premium beyond the legal rate of inte-rest.    If one will issue his negotiable paper and send it into the world, in consideration of an engagement of the party with whom he deals to do some act for his benefit in future, he declares in effect that he will pay the note or bill accord-ing to its terms to any one who shall become the holder for

Davis *v.* McCready.

value in the course of business, and rely for his own indemnity upon the promise he has received as the consideration for issuing it.

The plaintiffs were not bound to inquire whether the vendors of the vessel had performed their agreement. A party receiving a bill is not put upon inquiry unless circumstances of suspicion have come to his knowledge; and I have already said that there was nothing suspicious or out of the common course of business, in the circumstances out of which this bill arose. The agent of the acceptors chose to rely upon the personal responsibility of the vendors of the vessel so far as the repairs were concerned. As they gave their acceptance upon time, which they knew might be transferred to a *bona fide* holder the next day, so it is presumed they would have parted with their money upon the personal engagement of the vendors if a delay in payment had not been material to them. It would not, in my opinion, alter the case if it could be shown that the vendors, the payees of the bill, had broken their contract respecting the repairs before they negotiated the paper to the plaintiffs, it being found that the latter had no notice of the breach. The plaintiffs were not bound to follow up the transactions between the original parties to the bill. To hold otherwise would attach an inconvenient and repugnant condition to such an acceptance. By accepting simply and unconditionally a negotiable bill, the defendants are to be held as intending to give it all the qualities of commercial paper, one of which is that it shall circulate freely for the purposes of business, and be available in the hands of any holder for value. To decide that one who proposed to purchase it, and who had a knowledge of the nature of the transaction upon which it was given, must await the consummation of that transaction would essentially impair its character and legal effect. But in this case it was not known to any one that the payees had broken their agreement when the plaintiffs took the bill. The payees insisted that they had suffi-

ciently repaired the vessel before she was sent to sea, and the plaintiffs' agent, though he distrusted her condition as to sea-worthiness, concluded to receive and dispatch her on her voyage to New-York. Before she arrived at her destination the plaintiffs purchased the bill. After that it was demonstrated by the event that the repairs were insufficient, for she leaked to such an extent as to damage the cargo, and required extensive repairs upon her arrival. If, therefore, the plaintiffs had made inquiries when the bill was offered to them they would have learned that the plaintiffs' agent had accepted the brig as a sea-worthy vessel and had sent her to sea. So far from casting suspicion upon the bill this intelligence would have confirmed them in the belief that it ought to be paid according to its tenor. I conclude, therefore, that there were no merits in the defence.

All the rulings of the referee to which exceptions were taken, but one, related to testimony concerning breach of the agreement of repairs, and the damages consequent thereon. The questions overruled were wholly immaterial because the plaintiffs could not be affected by the breach and were not responsible for the damages. There is an exception of a different character. Before the brig sailed the defendant's agent made complaints to the vendors of the insufficiency of the repairs; the latter declared them sufficient. The agent was sworn on behalf of the defendants and testified that upon an occasion when he made such complaint Mr. Davis one of the plaintiffs was present. This testimony was given without objection. Subsequently the defendants offered to prove by the same witness that Davis was present when he made such a complaint, and it is stated that the referee overruled the offer. The desire seems to have been to repeat the evidence already given. The fact that one of the plaintiffs was present when the complaint was made had some tendency to show that he had knowlege of the breach of the condition; and the ruling cannot be defended except on the supposition that the offer was rejec-

The People *v.* The Supervisors of Orange.

ted because the fact was already sufficiently proved.  It does not appear what the objection was which the plaintiffs' counsel made, or indeed that he did object.   A party seeking a new trial on account of an erroneous exclusion of evidence must show that he may have been injured by the ruling. As the precise fact sought to be proved was already in evidence no prejudice could result from the referee's refusing to have it repeated.   These views lead to the affirmance of the judgment of the Court of Common Pleas.

All the judges concurring,

Judgment affirmed.