Where a party executed six several notes payable at from two to seven months under an agreement with the payee that the latter should furnish to the former a certain amount weekly of the notes of a certain bank, and that the drawer of the notes should take them up at maturity:

*Held,* that the notes were business and not accommodation paper, in the hands of the payees or of other parties to whom they should be in good faith transferred.

The failure of the payees to make the weekly payments as agreed, and their subsequent insolvency cannot affect the right of *bona fide* holders of the notes to recover.

Aᴘᴘᴇᴀʟ from judgment of Supreme Court. The action was brought to recover the proceeds of a promissory note made by the plaintiffs, McSpedon & Baker, for $1,880, dated New York, June 18th, 1857, payable to the order of M. L. Samuel & Co., six months after date, at the Bank of North America, upon the following facts, which were proved on the trial before Mr. Justice T. R. Sᴛʀᴏɴɢ, without a jury, ·at the New York Special Term, in April, 1859.

The note was made by the plaintiffs on the 18th of June, 1857, under an agreement between them and M. L. Samuel & Co., the payees, of which the following is a copy:

" CONFIDENTIAL CONTRACT.

" We agree to give Messrs. McSpedon & Baker, $400 weekly; in Troy City Bank bills, in payment of their notes; they (McS. & B.) to take up the notes as they mature," viz.:

" June 18, 1857, at two months for,.............. $1,840
" June 18, 1857, at three months for,............. 1,850
" June 18, 1857, at four months for,............. 1,860
" June 18, 1857, at five months for,............. 1,870
" June 18, 1857, at six months for,.............. 1,880
" June 18, 1857, at seven months for,............ 1,890
                                    " M. L. SAMUEL & CO.
" Nᴇᴡ Yᴏʀᴋ, June 18, 1857."

The note described in the complaint is the one at six months, mentioned in the agreement.

On the 22d of June, 1857, M. L. Samuel & Co. offered the note to the defendants for discount. The defendants did not discount it, but with the consent, and by the direction of M. L. Samuel & Co., retained the note as collateral security to the then previous indebtedness of M. L. Samuel & Co., to the defendants; which indebtedness was greater than the amount of the note, and which arose upon notes of M. L. Samuel & Co., with an indorser, which had been previously discounted by the defendants, and which indebtedness still remains.

M. L. Samuel & Co. made but one payment under the said agreement, and failed in business within a month after the date of the agreement, and are now insolvent.

The defendants made no advance upon the note in question. It was received by them on the 22d of June, 1857, inclosed in a letter from M. L. Samuel & Co., requesting the defendants to place the notes inclosed to their credit.

Previous to the maturity of the note, the plaintiffs gave notice to the Bank of North America not to pay it. But it was paid by the bank from the plaintiffs' funds. After said notice was given by a mistake or oversight, the fact of such notice being given having been forgotten, and the defendants, in fact, received the amount of the note at its maturity. Previous to the commencement of this action, the defendants were requested to pay the plaintiffs the amount thus received, which was refused.

Upon these facts, the judge decided, as matter of law, that the transaction between Samuel & Co. and the plaintiffs was, in substance, an exchange of the notes for the agreement, each being the consideration for the other; that the notes were, in legal effect, business paper, and the defendants were *bona fide* holders, for a sufficient consideration, of the note in question, although it was received as collateral security for a pre-existing debt; and that the defendants were entitled to judgment. This judgment having been affirmed at the General Term, the plaintiffs now appeal to this court.

*J. W. Edmonds*, for the plaintiffs.

*J. H. Reynolds*, for the defendants.

Wright, J.   The note in question was one of six notes, made by plaintiffs, on the 18th June, 1857, payable respectively at from two to seven months, to the order of M. L. Samuel & Co., for different sums, amounting in the aggregate to $11.190, and delivered to the payees under a written contract, whereby the payees agreed to give the makers $400 weekly, in Troy City Bank bills, in payment of the notes, and the makers to take up the notes as they matured.   On the 22d June, 1857 (four days after the arrangement), M. L. Samuel & Co., the payees, indorsed and transferred the note, to the defendants, as collateral security for a pre-existing debt.   Samuel & Co. made one payment of $400 under the agreement, and no more, having failed in business within a month after its date, and were, at the time of the trial, insolvent.   The note was made payable at the Bank of North America, and at its maturity (which was six months from date), was paid to the defendants by the bank from the plaintiffs' funds, by a mistake or oversight, subsequently to a notice given by the plaintiffs to the bank officers not to pay it. Before the commencement of this action the defendants were requested to pay the plaintiffs the amount thus received, which was refused.

The case involves the principal question whether the notes executed and delivered, under the agreement of the payees, M. L. Samuel & Co., to pay the makers four hundred dollars weekly, are to be treated as business paper.   If not accommodation, but business paper, made for consideration in the hands of Samuel & Co., I think the case is without merit.

The court below held that the transaction was, in substance, an exchange of the notes of the plaintiffs for the agreement of Samuel & Co. to pay them the weekly sum of $400, each being the consideration for the other.   If this be correct, the notes given were not accommodation but business paper, made for consideration ; and Samuel & Co., on receiving them, were purchasers and holders for value, and

at liberty to deal with the paper, in all respects, as if given for the price of goods sold, or money actually advanced. Indeed, it is not denied that this would be the character of the paper if the transaction is to be regarded as an exchange of the notes for the agreement of Samuel & Co. to pay the plaintiffs the weekly sum of four hundred dollars. (*Dowe* v. *Schutt*, 2 Denio, 621; *Cameron* v. *Chappell*, 24 Wend., 94; *Davis* v. *McCready*, 17 N. Y., 262.)

I am of the opinion that that was in substance and legal effect the nature of the arrangement. The plaintiffs executed and delivered to Samuel & Co., the payees, six notes, for different sums, and payable respectively at from two to seven months; the payees agreeing, in writing, to give the makers $400· per week in payment of them; the makers to take up the notes as they matured. The agreement of Samuel & Co. to pay the plaintiffs $400 per week was unquestionably a good and valid consideration for the execution and delivery of the six notes provided for; and, if Samuel & Co. had performed their agreement, the plaintiffs could not have contested their liability upon the notes. The weekly payment of $400 provided for, if made, would equal the aggregate sum of all the notes; the plaintiffs having the advantage of the earlier payments. In effect, the transaction was just the same as if Samuel & Co. had given to the plaintiffs their notes for $400, payable weekly during seven months, for those given by the plaintiffs in pursuance of the agreement.

This being the nature of the arrangement, Samuel & Co. on receiving the notes were purchasers and holders for value; the notes were business paper in their hands, to be dealt with as they pleased; and any subsequent holder acquiring their title would not be subject to any defense .growing out of their defaults happening afterward.

A further point to be noticed is, were the defendants *bona fide* holders of the note in suit upon a good consideration in law. I think they were. On the 22d June, 1857, Samuel & Co. transferred the note to them as collateral security for an antecedent indebtedness, which is still unpaid

and exceeds the amount of the note.  At the time of the transfer there was no default by Samuel & Co., in the performance of their contract with the plaintiffs, no $400 payment had become due, and that which first matured was paid by them.  When, then, the note was transferred there was no infirmity in the title of Samuel & Co., and no equities existing which could have been set up against them by the plaintiffs, if the note had then been due.  In this condition the defendants succeeded to the right and title of Samuel & Co., and their right is not subject to, and cannot be affected by, any equities which subsequently arose between the makers and payees.  Their title could only, in any event, be affected by equities existing between the original parties at the time of the transfer. (*Furness* v. *Gilchrist*, 1 Sand. S. C., 53.)  If at the time of the transfer of the note to the defendants it had been due, Samuel & Co., the payees, could have maintained an action upon it against the plaintiffs.  By such transfer upon a good consideration, as between Samuel & Co. and the defendants, the defendants succeeded to their rights, although they advanced no new consideration ; and no equities subsequently arising between the original parties could impair the rights of the defendants.

These views render unnecessary the discussion of the question whether the money was so paid to the defendants as to enable the plaintiffs to recover it back.

The judgment should be affirmed.


Campbell, J  In June, 1857, the plaintiffs entered into an arrangement with the firm of M. L. Samuel & Co., which was reduced to writing, as follows: " We agree to give Messrs. McSpedon & Baker $400 weekly in Troy City Bank bills, *in payment* of their notes, they (McS. & B.) to take up the notes as they mature, viz." Then follows a list of six notes, of which the note now in controversy was one, and the contract signed by M. L. Samuel & Co.  Were the notes issued under that arrangement merely accommodation notes, or did they constitute what is called in commercial language business paper  It seems to me there is hardly room for

doubt, either upon principle or authority. The makers of the notes were to take them up at maturity. They were to pay them, at all events, in coin, if the holders at maturity should require it. The parties receiving the notes agreed to pay therefor in a specific article, namely, Troy City Bank bills. These bills might or might not pass current as money when the notes should mature. They might be an article of purchase and sale by the brokers in the city of New York, where the contract was made. A specified amount of these bills was to be given in payment of the notes. There was no provision to indemnify the makers of the notes beyond the contract to furnish the bank-bills in payment — no provision to indemnify in all events; and that is the very essence of the contract, where a note is made by one person for the sole benefit of another. The principal element of an accommodation note was thus wanting. The point is in effect decided in *Cameron* v. *Chappell* (24 Wend., 94); *Dowe* v. *Schutt* (2 Denio, 621), and in *Davis* v. *McCready* (17 N. Y., 232). If the note in controversy was in legal effect business paper, as I think clearly it was, then it was good and valid in the hands of Samuel & Co., and they could transfer it to the defendant in payment of indebtedness, or as collateral security for the payment of such indebtedness. In point of fact there had been no breach of the contract on the part of Samuel & Co. when they transferred the note. But if the note was valid business paper in their hands, I do not see that this made any difference in legal effect. If the note had remained with Samuel & Co. and matured in their hands, doubtless the plaintiffs would have had their set-off or counter claim. If the foregoing views are correct, then the defendant might have enforced the collection of the note against the plaintiffs; and the question whether the bank, where the note was made payable, paid it by mistake out of the funds of plaintiffs, is of no moment.

I think the case has been correctly disposed of in the courts below, and the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.