## McSPEDON *ads.* TROY CITY BANK.

December, 1865.

Affirming 33 *Barb.* 81.

Negotiable notes, made under an agreement that the payees should give the makers a definite sum, weekly, in the bills of a certain bank *in payment* therefor ; and that the notes at maturity should be taken up by the makers,—*Held*, to be not accommodation but business paper, made for a consideration ; and, when transferred to third parties by the payees, in payment of, or as collateral security for their indebtedness, to be not subject to equities subsequently arising between the original parties.

Thomas McSpedon and C. W. Baker were sued by the Troy City Bank in the supreme court, on a promissory note.

The note in question was one of six notes, made by the firm, on June 8, 1857, payable respectively at from one to seven months, to the order of M. L. Samuel & Co.

McSpedon & Baker were a business firm in the city of New York. The agreement under which the notes were given was as follows: "Confidential contract. We agree to give Messrs. McSpedon & Baker $400 weekly in Troy City Bank bills, in payment of 'their notes, they (McS. & B.) to take up the notes as they mature, viz:" [here followed a list of notes payable at periods varying from two to seven months from June 18, 1857, and all for sums of between one thousand eight hundred dollars and one thousand nine hundred dollars].

"Dated June 8th, 1857.　　　Signed, M. L. Samuel & Co."

On June 22, four days after this arrangement, M. L. Samuel & Co., the payees, indorsed and transferred the note to defendants as collateral security for a pre-existing debt. Samuel & Co. made only one payment of four hundred dollars under the agreement, having failed in business within a month after its date, and were, at the time of the trial, insolvent. The note was made payable at the Bank of North America, and at its maturity (which was six months from date) was paid to the defendants by the bank, from the plaintiff's funds, by a mistake or oversight, subsequently to a notice given by the plaintiff's to the bank officers not to pay it. Before the commencement of this action the defendants were requested to pay the plaintiffs the amount thus received, which was refused.

*The supreme court,* on appeal, affirmed a judgment rendered against defendants by a judge on the trial without a jury, holding that the transaction was in substance an exchange of the notes for the agreement, each being a consideration for the other. Though the language of the agreement was that the bank bills were to be received in payment *of the notes,* the fair meaning obviously was that the bills were to be in payment *for* the notes; that the case was the same in principle as if, instead of the writing executed by the payees of the notes, the payees had at the same time given their notes to the same amount in accordance with the provision for weekly payments. In this view of the case, the notes were business paper (2 *Den.* 621;

3 *Id.* 187; 24 *Wend.* 94; 6 *Duer*, 538] and the evidence showed defendants to be *bona fide* holders for sufficient legal consideration. [1 *Sandf.* 53; 5 *Id.* 7.] Plaintiffs appealed.

*John W. Edmonds*, for plaintiffs, appellants;—Insisted that the notes were accommodation and not business paper. The true test is, could the original payee sue on the paper if not transferred? and as between original parties, on which of them rests the obligation as to final payment? *Pars. Merc. Law*, 93, § 6; Wooster *v.* Jenkins, 3 *Den.* 189; Dow *v.* Schutt, 2 *Den.* 623. The agreement was not an exchange, but merely fixed the time within which Samuel & Co. were to perform the obligation which the law cast upon them by reason of their receiving plaintiff's notes made for their accommodation. Defendants were not *bona fide* holders for value. Bay *v.* Coddington, 20 *Johns.* 637; Stalker *v.* McDonald, 6 *Hill*, 93; Youngs *v.* Lee, 12 *N. Y.* 551; *Smith's Merc. Law*, Am. ed. 258, n.; 3 *Kent*, 5 ed. 78. That the money sought to be recovered was paid by mistake and is recoverable by *assumpsit.* 2 *Smith's Lead. Cas.* 394; Brown *v.* McKennally, 1 *Esp.* 279; Parker *v.* Great Western R. R. Co., 7 *M. & Gr.* 253; Franklin Bank *v.* Raymond, 3 *Wend.* 69.

*John H. Reynolds*, for defendants, respondents;—That the arrangement was an exchange of notes, cited Dow *v.* Schutt, 2 *Den.* 621; Cameron *v.* Chappell, 24 *Wend.* 94; Davis *v.* McCready, 17 *Y. N.* 232. That defendants were *bona fide* holders. Furniss *v.* Gilchrist, 1 *Sandf.* 53; Graves *v.* Woodbury, 4 *Hill*, 559; Spencer *v.* Barbour, 5 *Hill*, 568; Wheeler *v.* Wheeler, 9 *Cow.* 34; Mead *v.* Gittell, 19 *Wend.* 397; Brookman *v.* Metcalf, 5 *Bosw.* 429, 444. That there was no mistake of fact. Mowatt *v.* Wright, 1 *Wend.* 360; 2 *Smith's Lead. Cas.* 5 Am. ed. 403, marg. pag. 244; Milner *v.* Duncan, 6 *B. & C.* 671.

WRIGHT, J. [after stating the facts.]—The case involves the principal question whether the notes executed and delivered, under the agreement of the payees, M. L. Samuel & Co., to pay the makers four hundred dollars weekly, are to be treated as business paper. If not accommodation, but business paper,

made for consideration in the hands of Samuel & Co., I think the case is without merit.

The court below held that the transaction was, in substance, an exchange of the notes of the plaintiffs for the agreement of Samuel & Co. to pay them the weekly sum of four hundred dollars, each being the consideration for the other. If this be correct, the notes given were not accommodation but business paper, made for consideration; and Samuel & Co., on receiving them, were purchasers and holders for value, and at liberty to deal with the paper, in all respects, as if given for the price of goods sold, or money actually advanced. Indeed, it is not denied that this would be the character of the paper if the transaction is to be regarded as an exchange of the notes for the agreement of Samuel & Co. to pay the plaintiffs the weekly sum of four hundred dollars. Dowe *v.* Schutt, 2 *Den.* 621; Cameron *v.* Chappell, 24 *Wend.* 94; Davis *v.* McCready, 17 *N. Y.* 230.

I am of the opinion that that was in substance and legal effect the nature of the arrangement. The plaintiffs executed and delivered to Samuel & Co., the payees, six notes, for different sums, and payable respectively at from two to seven months, the payees agreeing, in writing, to give the makers four hundred dollars per week in payment of them; the makers to take up the notes as they matured. The agreement of Samuel & Co, to pay the plaintiffs four hundred dollars per week was unquestionably a good and valid consideration for the execution and delivery of the six notes provided for; and, if Samuel & Co. had performed their agreement, the plaintiffs could not have contested their liability upon the notes. The weekly payment of four hundred dollars provided for, if made, would equal the aggregate sum of all the notes; the plaintiffs having the advantage of the earlier payments. In effect, the transaction was just the same as if Samuel & Co. had given to the plaintiffs their notes for four hundred dollars, payable weekly during seven months, for those given by the plaintiffs in pursuance of the agreement.

This being the nature of the arrangement, Samuel & Co. on receiving the notes were purchasers and holders for value; the notes were business paper in their hands, to be dealt with as

they pleased; and any subsequent holder acquiring their title would not be subject to any defense growing out of their default happening afterward.

A further point to be noticed is, were the defendants *bona fide* holders of the note in suit upon a good consideration in law. I think they were. On June 22, 1857, Samuel & Co transferred the note to them as collateral security for an antecedent indebtedness, which is still unpaid and exceeds the amount of the note. At the time of the transfer there was no default by Samuel & Co., in the performance of their contract with the plaintiffs, no four hundred dollars had become due, and that which first matured was paid by them. When, then, the note was transferred there was no infirmity in the title of Samuel & Co., and no equities existing which could have been set up against them by the plaintiffs, if the notes had then been due. In this condition the defendants succeeded to the right and title of Samuel & Co., and their right is not subject to, and cannot be affected by, any equities which subsequently arose between the makers and payees. Their title could only, in any event, be affected by equities existing between the original parties at the time of the transfer. Furniss *v.* Gilchrist, 1 *Sandf.* 53. If at the time of the transfer of the note to the defendants it had been due, Samuel & Co., the payees, could have maintained an action upon it against the plaintiffs. By such transfer upon a good consideration, as between Samuel & Co. and the defendants, the defendants succeeded to their rights, although they advanced no new consideration; and no equities subsequently arising between the original parties could impair the rights of the defendants.

These views render unnecessary the discussion of the question whether the money was so paid to the defendants as to enable the plaintiffs to recover it back.

The judgment should be affirmed.

CAMPBELL, J. [after stating the facts].—Were the notes issued under the arrangement merely accommodation notes, or did they constitute what is called in commercial language business paper? It seems to me there is hardly room for doubt, either upon principle or authority. The makers of the notes were

to take them up at maturity. They were to pay them, at all events, in coin, if the holders at maturity should require it. The parties receiving the notes agreed to pay therefor in a specific article, namely, Troy City Bank bills. These bills might or might not pass current as money when the notes should mature. They might be an article of purchase and sale by the brokers in the city of New York, where the contract was made. A specified amount of these bills was to be given in payment of the notes. There was no provision to indemnify the makers of the notes beyond the contract to furnish the bank bills in payment—no provision to indemnify in all events; and that is the very essence of the contract, where a note is made by one person for the sole benefit of another. The principal element of an accommodation note was thus wanting. The point is in effect decided in Cameron *v*. Chappell, 24 *Wend.* 94; Dowe *v*. Schutt, 2 *Den.* 621, and in Davis *v*. Mc-Cready, 17 *N. Y.* 230, 232. If the note in controversy was in legal effect business paper, as I think clearly it was, then it was good and valid in the hands of Samuel & Co., and they could transfer it to the defendant in payment of indebtedness, or as collateral security for the payment of such indebtedness. In point of fact there had been no breach of the contract on the part of Samuel & Co. when they transferred the note. But if the note was valid business paper in their hands, I do not see that this made any difference in legal effect. If the note had remained with Samuel & Co. and matured in their hands, doubtless the plaintiffs would have had their set-off or counter-claim. If the foregoing views are correct, then the defendant might have enforced the collection of the note against the plaintiffs; and the question whether the bank, where the note was made payable, paid it by mistake out of the funds of plaintiffs, is of no moment.

I think the case has been correctly disposed of in the court below, and the judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.