(38 App. Div. 240.)

TRADESMEN'S NAT. BANK v. CURTIS et al.

(Supreme Court, Appellate Division, First Department.   March 17, 1899.)

DRAFTS—CONDITIONS—DISCOUNTING.

Evidence that, at an interview at the office of a coal company, at which was discussed the acceptance by defendants of a draft drawn by said company, there being present T., the president of the company, B., one of the company, and W., a director of the company, who was also cashier of plaintiff bank, which afterwards discounted the draft, W., on reluctance being expressed by B. to give the acceptance, said that it would be all right, that they would discount the paper, and T. said that, if coal to the amount of the draft was not delivered defendants, the acceptance would be taken up by the company or bank, shows that the acceptance was discounted, not only with knowledge by plaintiff that it was made on the conditional agreement, but also with the understanding of the cashier that plaintiff would not enforce the paper against defendants if the company did not deliver the coal, whereby such agreement would be binding on plaintiff.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by the Tradesmen's National Bank against Grove D. Curtis and another.   From a judgment on a verdict for defendants, and from an order denying a new trial, plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Arthur J. Baldwin, for appellant.
Rufus L. Scott, for respondents.

PATTERSON, J.   The defendants are sued as the acceptors of two drafts drawn upon them by the Natalie Anthracite Coal Company.   Those drafts were payable to the drawer's order, were accepted by the defendants, and were discounted by the plaintiff.   The answer set up the affirmative defense that the acceptances were, by agreement with the drawer, conditioned upon the delivery by the drawer of coal to the full amount of both drafts; that such drafts were to be paid by the acceptors only after the delivery to them of such coal; that the coal never was delivered, and that, therefore, the acceptances were without consideration; that all of the facts mentioned, constituting the affirmative defense, were within the knowledge of the plaintiff; and that, having taken such acceptances with that knowledge, the plaintiff is not a bona fide holder, but took the drafts subject to the equities existing between the acceptors and the drawer.   Upon the trial, testimony was given of the circumstances under which the drafts were drawn and accepted, and further evidence was introduced to show knowledge of the plaintiff's cashier of the conditions under which it is alleged the acceptances were given, and actual participation was shown of such cashier in the negotiations as the result of which the acceptances were made by the defendants.   Upon conflicting testimony, the jury found a verdict in favor of the defendants, and from the judgment entered upon that verdict, and from an order denying a motion for a new trial, the plaintiff appeals.

It would be no defense to these acceptances that they were given upon an executory contract for the sale of merchandise, even if the plaintiff knew that an agreement existed between the makers and the acceptors that the drafts were not to be enforced until the merchandise was delivered, unless the acceptances were discounted with knowledge of the breach. Davis v. McCready, 17 N. Y. 230. But, under the proofs, that is not the rule of law applicable to this case. The evidence introduced by the defendants showed that the plaintiff's cashier was present at the time the defendants agreed to accept the drafts, and that the whole subject of the acceptances, and the conditional liability of the defendants thereupon, was discussed at an interview in which a Mr. Taylor, the president of the Natalie Coal Company, Mr. Blaisdell, one of the acceptors, and Mr. Wardrop, the plaintiff's cashier, took part. Blaisdell testified that there was produced at that interview a memorandum showing the state of an account between the Natalie Coal Company and the acceptors; that he was reluctant to give the acceptances; that Wardrop took the memorandum in his hand, and finally he (Wardrop) said it would be all right; that they would discount the paper,—the acceptance. The witness then testified that Mr. Taylor added, "If the coal is not delivered, the acceptances will be taken up." He was then asked, "By whom?" to which he answered, "By the Natalie Coal Company or the Tradesmen's National Bank." This testimony goes to the establishment of the fact that, in the very inception of these acceptances, it was in contemplation that they should be discounted by the Tradesmen's National Bank; and that the cashier of that bank was a party to the agreement by which the defendants gave their acceptances, not to be enforceable unless the Natalie Coal Company delivered coal to the full amount of such acceptances, and no coal was delivered.

It was for the jury to say whether they would believe that testimony, and, as they did believe it, their finding establishes that the acceptances were discounted, not only with full knowledge by the plaintiff that they were made on the conditional agreement, but also with the understanding of the plaintiff's cashier that the bank would not enforce the paper against the acceptors if the makers did not deliver the coal. The cashier was willing to take the paper on that condition, as the jury must have found. The case, therefore, falls within Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 864, Benton v. Martin, 52 N. Y. 570, and Higgins v. Ridgway, 153 N. Y. 132, 47 N. E. 32, which hold that an instrument not under seal may be delivered upon conditions, the observance of which, as between the parties, is essential to its validity; that the operation of the instrument may be limited by the conditions upon which the delivery was made; that parol evidence of such conditions is not open to the objection of varying or contradicting a written contract; and that the rule applies to the enforcement of negotiable paper, not only as between the original parties, but as to others having notice.

The judgment and order appealed from should be affirmed, with costs. All concur, except INGRAHAM and McLAUGHLIN, JJ., dissenting.

INGRAHAM, J. (dissenting).   I cannot concur in the affirmance of this judgment.   The evidence in the case is uncontradicted that the bill sued on was accepted by the defendants for the accommodation of the drawer, the Natalie Anthracite Coal Company.   It appeared that, at the time the bills in suit were drawn and accepted, the defendants and the corporation had entered into a contract by which the corporation was to deliver to the defendants anthracite coal at an agreed price, and these acceptances were given for coal to be delivered under this contract; the corporation agreeing that, if the coal was not delivered, the acceptances would be renewed. One of the defendants, testifying as to the arrangements under which these particular drafts in suit were accepted, said that he objected to accepting, by asking, "Why is it necessary for me to give drafts to the Natalie Coal Company when I can buy coal—all I want—on 60 days' time, without giving any paper?"   To that the president of the corporation replied:  "This was an accommodation to them.   That is what Taylor told me at that time.   It was a great accommodation to them."   The witness further testified that nothing was said about the acceptances being discounted or what the corporation would do with them.   He simply knew that the corporation had had acceptances of the same kind that had been given before and discounted.   Mr. Taylor, the president of the corporation, testified that at this meeting he had stated to the defendants, before the notes were given, that if the corporation did not deliver the coal before the bills fell due, it would renew the bills; that all that was said was that, if the coal was not delivered prior to the notes falling due, the notes would have to be renewed until the coal was delivered; that, previous to these transactions, the plaintiff had discounted other paper on the same terms for the defendants.   It is not disputed by the defendants that these bills were accepted at the request, and for the accommodation, of the coal company, with the expectation that they were to be discounted for the benefit of the coal company.   The testimony of the defendant that the Natalie Coal Company, or the Tradesmen's National Bank, was to take care of these bills, if coal was not delivered, was evidently the conclusion of the witness, and not an agreement of any one on behalf of the Tradesmen's National Bank that plaintiff was to take care of the notes; for the witness further testified that he had no knowledge as to what disposition should be made of the bills after they were accepted, and merely assumed that they were to be discounted in the same way that other bills had been discounted by the corporation.   It is not alleged that the bank made any agreement at this time either to discount the bills or to renew them after they were discounted.   The meeting at which this conversation was held was at the office of the coal company, and was between the defendants and the coal company's representative.   The cashier of the plaintiff was present at that meeting, not as cashier of the bank, but as a director of the coal company.   The bills were not then discounted by the bank, nor was there any agreement for such discount.   There was here merely an understanding between the drawer of the bills and the acceptor, not that there should be a condition at delivery

of the bills, or that the bills should not be existing obligations, unless some act was done by some of the parties subsequent to the delivery; but the defendants accepted the bills for the accommodation of the coal company, relying on its agreement that, if the coal to be delivered under the contract between the parties was delivered at the time the bills became due, the coal company would see that the bills were renewed. After these bills had been accepted by the defendants, they were sent to the plaintiff with other paper for discount, the first of the bills being sent on March 20, 1897, with the following letter from the president of the coal company: "I inclose, in this letter, for discount, the following pieces of business paper: * * * Acceptance of Curtis & Blaisdell, Mar. 20, four months, $3,000.00;" and the second was sent on April 12, 1897, in the following letter: "Inclosed please find, for discount, acceptance of Curtis & Blaisdell, dated April 12, at three months, for $2,500.00." Upon these statements by the drawers of the bill, the bank discounted them in the ordinary course of business, paying the drawers (the corporation) the amount of the bills, less the discount. There was here no conditional delivery or acceptance of these bills by the defendants, but the acceptance was for the accommodation of the drawers, and relying upon the agreement of the drawers that the bills should be renewed in case the drawers failed to deliver the coal before the bills became due. It seems to me that the case comes within the principle established in the case of Bank v. Penfield, 69 N. Y. 504, where the court say:

"It is universally conceded that the holder of an accommodation note, without restriction as to the mode of using it, may transfer it either in payment or as collateral security for an antecedent debt, and the maker will have no defense. The existing debt is a sufficient consideration for the transfer, and no new consideration need be shown. It is only where the note has been diverted from the purpose for which it was intrusted to the payee, or some other equity exists in favor of the maker, that it is necessary that the holder should have parted with value on the faith of the note, in order to cut off such equity of the maker."

And in Bank v. Townsend, 87 N. Y. 9, the same principle is applied. The principle applied in Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 864, and Higgins v. Ridgway, 153 N. Y. 133, 47 N. E. 32, is not applicable. Higgins v. Ridgway discusses the question. The court say:

"The question here arises whether the transaction, as testified to by the defendants, constituted a conditional delivery of the note so as to fall within the principle of the foregoing cases, or whether the defendants' testimony was an attempt to vary or contradict the written contract between the parties, and, consequently, inadmissible. We think the import of the defendants' evidence is that the delivery of the note in suit, as well as the note it was given to renew, was conditional, and was for the accommodation and to serve some particular purpose of the bank. Therefore, as there was no consideration for the note, and as the bank could not be regarded as a bona fide holder, we are of the opinion that the plaintiff's exceptions to the refusal of the court to direct a verdict for the plaintiff and to the charge of the court were invalid."

There is certainly not the slightest evidence in this case to show that there was any conditional delivery of these bills to the plaintiff bank. It is not claimed that the bills were given for the ac-

commodation of the plaintiff, or that it was a party to any agreement which would restrict the liability of the acceptor of the bills upon the acceptance. The contract of agreement for the renewal of the bills was made with the drawer, and not with the bank. From the evidence of the defendants, I think it clear that the attempt was to vary or contradict the written instrument, and not to show a conditional delivery of the bills. It is not necessary to determine whether or not the bank had notice that there was an agreement between the maker and acceptor of the bills to renew if the coal was not delivered. The cashier of the bank, which is located in the state of Pennsylvania, was present at the office of the coal company, in the city of New York, on the business of the coal company, and as a director of that corporation. There is no evidence to show that he had any authority to make a contract for the discount of these bills away from the banking house, and when not engaged in its business, or that he did assume to make such a contract. The letters to the bank inclosing the bills for discount show that the bills were sent to the bank in the ordinary course of business, as business paper, to be discounted by the bank for the benefit of the drawer of the bill; the defendants expressly testifying that nothing was said at the time the bills were given as to what disposition the company should make of them. That notice, thus acquired by the cashier, away from the bank, and not engaged in any business for the bank, but acting as the director of another corporation, was notice to the bank of the agreement by which, upon a subsequent discount of the bills, it failed to become a bona fide holder for value, may well be doubted. But, assuming that the bank had notice of this agreement between the coal company and the defendants that the coal company had agreed to renew the bills if the coal was not delivered, it certainly would not prevent the bank from recovering on the acceptances by which the defendants had agreed to pay sums of money at a time fixed. These contracts by the defendants were in writing. They agreed to pay to the plaintiff a sum of money at a time fixed. This agreement could not be invalidated by proof that there was a prior parol agreement by which the defendants were not to pay the sum that by the written contract they had agreed to pay. The plaintiff, by the discount of the bills, had become the owner of them, and, unless this rule is to be entirely abrogated, so that any one who makes a note or accepts a bill can avoid paying it by proof that, although he in writing promised to pay, he at the same time said he would not pay, the plaintiff is entitled to recover.

McLAUGHLIN, J., concurs.