BANK *v.* PENLAND.

(*Knoxville.*    November 2, 1898.)

1. BANKS AND BANKING.    *Notice to cashier is notice to bank, when.*

Notice to the cashier of a bank of equities between the maker and indorser of a note, is chargeable to the bank where he was allowed full liberty and the widest authority to discount paper, and the board of directors and discount committee rarely met, and did not look after the discounts as was their duty.    (*Post, pp. 446, 447.*)

2. BILLS AND NOTES.    *Innocent holder.*

The mere fact that the purchaser of a negotiable note knew that the same was given for land, and that there was a lien on the land for the unpaid purchase money, and that there might thereafter occur a partial failure of consideration by an enforcement of the lien, does not deprive him of the character of a *bona fide* holder or subject him to the equities between the original parties.    (*Post, pp. 447–449.*)

Cases cited and approved: Bank *v.* Stockell, 92 Tenn., 256; Bearden *v.* Moses, 7 Lea, 459.

Cited and distinguished: Ingram *v.* Morgan, 4 Hum., 65; Ferris *v.* Tavel, 87 Tenn., 386.

FROM COCKE.

Appeal from Chancery Court of Cocke County. JOHN P. SMITH, Ch.

H. N. CATE for Bank.

W. J. McSWEEN for Penland.

WILKES, J. This is an action to recover against defendant Penland two notes for $66.66 each. The notes were given by Penland to the Newport Development Co., and by it indorsed, and complainant claims to be an innocent holder for value of the same. Penland answered the bill, and filed a cross bill, in which he seeks to avoid the notes and rescind the contract out of which they arose, upon the ground that they were obtained by the fraudulent representations of the bank and development company that the lot for which they were given was free of all incumbrances and liens; that the bank had notice of the liens held by the parties who sold to the development company, and took the notes subject to the equities of Penland against the development company. The Court of Chancery Appeals find that the bank had notice of the lien of the Newport Real Estate Co. upon this lot, and was affected, in consequence, with all of Penland's equities against that part of the lot purchased from that company, but that a portion of the lot was purchased from one Denton, and the bank did not have such notice of a lien in favor of Denton as would affect it. Hence that Court canceled one note, and entered a credit on the other, and gave judgment against Penland for the balance, the idea being to release Penland from liability for so much of the lot as was bought from the Newport company, but hold him for so much as was bought from Denton by the development company. Both parties have

appealed, and in this Court it is insisted, for complainant, that Penland should be held for the whole of both notes, and by the defendant that he should be released from both.

Disposing of complainant's assignments, first, it is insisted that the Court of Chancery Appeals erred in holding that notice to the cashier of complainant bank was notice to the bank, and the contention is, that the bank would only be affected by notice to one of its discount committee or directors. The Court of Chancery Appeals finds, as a fact, that the cashier of this bank was allowed full liberty and the widest authority to make loans and discount paper, and that the discount committee and board of directors rarely met, and did not look after the discounts, as was their duty. Having given full authority to the cashier to make discounts, the bank cannot be heard to say that notice to him was not notice to the bank in the discounting of notes.

The next assignment is, that Penland knew of the defects in his title, and took warranty deed to protect himself therefrom, and hence, it is no defense to him that the bank had notice of these defects and liens. Nor can it avail him anything that the development company afterwards became insolvent. In the same connection it is said that Penland, having taken a deed with covenants of warranty, has no equitable defense against the note unless he shows fraud; but his only protection is the covenants in his deed. The Court of Chancery Appeals find that,

while fraud is charged in the cross bill, it is not shown in the proof. That Court reports, also, that the fact of the insolvency of the development company is set up in the answer, and that the cross bill, in effect, charges that Penland has been evicted, and these facts are proven, but they are not alleged to have been in existence when the note was received by the bank. Upon this statement of facts, the question recurs, Is the bank a *bona fide* holder and innocent purchaser of the notes, or is it affected by the equities between the original parties? It took the notes before maturity, as collateral, it is true, but as security for money then advanced. If there were nothing else in the case this would make it an innocent holder. *Bank* v. *Stockell*, 8 Pickle, 256. Does the mere fact that it knew the notes were given for land, and that there was a lien on the land for unpaid purchase money, and that there might thereafter occur a partial failure of considertion by an enforcement of the lien, render the bank subject to all equities that might thereafter arise between the original parties? The Court of Chancery Appeals was of opinion it did, and they cite *Ingram* v. *Morgan*, 4 Hum., 65, and *Ferris* v. *Tavel*, 3 Pickle, 386, in support of their holding. But in both of these cases the holder of the notes in controversy took them to secure a pre-existing debt, and could not be called an innocent holder. And the cases referred to in 4 Am. & Eng. Enc. L. (2d Ed.), p. 198, are based upon a similar state of facts.

But this partial failure of consideration cannot be asserted against a *bona fide* holder for value, for such a holder takes the title free from the equities between the original parties. 4 Am. & Eng. Enc. L. (2d Ed.), p. 198; *Bank* v. *Stockell*, 8 Pickle, 256.

In addition, it does not appear that these equities existed between the original parties at the time these notes were indorsed to the bank. The purchaser, Penland, had not then been evicted, and, so far as the record shows, the insolvency of the company had not then been made manifest. The defense, in order to be set up against the indorsee, must be an equity that existed when the indorsement was made. *Bearden* v. *Moses*, 7 Lea, 459.

We are of opinion that upon the facts as found by the Court of Chancery Appeals, the bank was the *bona fide* innocent holder of these notes, and entitled to enforce their collection free of any equities arising between the original parties after it received them, and the Court should have so decreed.

The decree of the Court of Chancery Appeals is reversed, and judgment will be entered in favor of complainant against defendant for both notes and interest and ten per cent. attorneys' fees, as provided in the notes, and all costs.