LEVI M. TODD, Appellant, v. STATE BANK OF EDGEWOOD, Appellee.

**BILLS AND NOTES:** Holder in Due Course—Knowledge That Note is One of Two Mutual and Dependent Contracts. The purchaser of a negotiable promissory note, with knowledge, at the time of purchase, *that said note is only one of two mutual and dependent contracts, neither of which is enforceable without simultaneous performance of the other*, is not a "holder in due course," even though the purchase is (a) for value, (b) before maturity, and (c) before performance of either contract was due, and consequently before any *breach* in either of said contracts.

SALINGER, J., dissents.

PRINCIPLE APPLIED: A written land contract provided that vendor would, on the maturity of the last payment, furnish to vendee abstract of title showing title in vendor, free and clear of incumbrance, and, upon approval by vendee of said abstract, would convey by warranty deed. It was provided that, upon such approval, the purchase money was due from vendee. All money paid by vendee was to be returned to him, if warranty deed and abstract were not furnished. Ordinary negotiable, promissory notes, maturing on a series of dates, were executed and delivered by vendee to the vendor. These notes were purchased by a bank, on due indorsement, for value, before maturity, and *before performance was due under the land contract*. During the negotiations for the purchase, the bank knew that said notes were given upon a contract for land. *When the purchase of the notes was made*, the bank demanded and received the land contract, with an indorsement thereof to it. The vendee (maker of the notes) knew of the purchase of the notes by the bank, and, at a proper date, tendered his money to the bank, *on condition that he receive the stipulated abstract and, upon its approval, the stipulated deed*. The vendor (original payee in the notes) became insolvent, prior to said tender, and had, in the meantime, lost, by foreclosure, all title to said land. The bank brought action on the notes. *Held*, the land contract and the notes were *mutual* and *dependent* contracts,—in effect *one* contract,—and that the bank, having purchased with full knowledge thereof, was not a holder in due course of said notes.

CONTRACTS: Construction—Contemporaneous Agreements—Bills and Notes. The effect of
1. Contemporaneous, *collateral*, and *independent* agreements accompanying negotiable, promissory notes, and
2. Contemporaneous, *mutual*, and *dependent* agreements accompanying such notes, as bearing on "due-course" holdership, contrasted and discussed.

CONTRACTS: Construction—Contemporaneous Agreements. Principle recognized that *several* written instruments, made at one and the same time, with reference to one and the same subject matter, constitute, in practical effect, but *one* instrument, and are construable as such.

PRINCIPLE APPLIED: See No. 1.

ESTOPPEL: Equitable Estoppel—Asserting Legal Right. Standing on one's legal rights cannot, of itself, work an estoppel.

APPEAL AND ERROR: Review, Scope of—Causes Tried in Equity Reviewable in Equity. Litigants who, throughout the trial in the lower court, treat their cause as an equitable one, may not, on appeal, ask that the findings of the trial court be treated as the findings of a *jury, even though the issues were not of an equitable nature.*

*Appeal from Delaware District Court.*—C. W. MULLAN, Judge.

DECEMBER 20, 1917.

ACTION to enforce an agreement, whereby it is claimed that defendant received a sum of money originally deposited with the Delaware County State Bank, and afterwards taken over by defendant upon an agreement to return the same to plaintiff on demand, if plaintiff did not receive title to certain land in the state of Texas, which plaintiff had purchased from the American & Canadian Land Company. It is alleged that this money was deposited in the banks as a tender of the amount due on certain notes given for the Texas land, with a demand for the fulfillment of the contract, which was never met; and the suit was primarily to recover the amount of the tender and deposit from

the bank. Defendant bank admitted the tender and deposit, said it was made to stop interest on the notes, and also pleaded a counterclaim upon the notes. It also alleged that plaintiff was a nonresident, and it sued out a writ of attachment, which was levied upon the fund. To this, plaintiff replied by alleging that the consideration for the notes had failed, and that defendant was not a bona-fide holder thereof, but had notice, when it purchased, that the notes were given for the purchase price of lands, title to which thereafter entirely failed. Defendant averred that it was a bona-fide holder, without notice of any infirmities, and also pleaded an estoppel on plaintiff to deny the validity of the notes. Other issues were tendered, which will be noticed in the body of the opinion.

The case was tried as in equity, resulting in a decree dismissing plaintiff's petition, finding for the defendant on its counterclaim, and sustaining the attachment. Plaintiff appeals.—*Reversed.*

*Yoran & Yoran,* and *J. W. Arbuckle,* for appellant.

*W. H. Norris,* and *Grimm & Trewin,* for appellee.

1. BILLS AND NOTES: holder in due course: knowledge that note is one of two mutual and dependent contracts.

WEAVER, J.—I. In March of the year 1909, plaintiff and one F. B. Peet separately entered into written contracts with the American & Canadian Land Company, of Tipton, Iowa, for the purchase of certain Texas lands. Plaintiff, Todd, agreed to pay $3,600 for his tract, $800 of which he paid in cash, and the balance, $2,800, was represented by two negotiable promissory notes, in the sum of $1,400 each, maturing March 18, 1912. Peet agreed to pay $7,200 for his land, $3,200 of which was paid by a transfer of land to the company, and the remainder was represented by negotiable notes, in the sum of $1,000 due March 18, 1912, $1,000 due March 18, 1913, $1,000 due March 18, 1914, and a note for the same amount due March 11, 1911, which was paid by Peet. The

five notes above described are made the subject of counter-claim against the plaintiff, he having taken over the Peet contract and assumed and agreed to pay the notes. The American & Canadian Land Company executed contracts with the purchasers of the land, wherein it was agreed, among other things:

"In consideration of the payments above mentioned the vendor agrees to convey to purchaser in fee simple, free and clear of all incumbrances the following described real estate, to wit: 'Southeast Quarter of Section No. 5 in Block 6, Randall County, State of Texas, U. S. A.

"It is further agreed that on the date of the last payment mentioned herein in case same shall have been fully paid purchaser shall have a warranty deed to the above described property, together with an abstract of title showing title free and clear from all incumbrances in vendor. Said abstract to be approved by Gustavus, Bowman & Jackson of Amarillo, Texas, and when so approved to be final and conclusive upon the purchaser and his money shall be due and payable.

"All money paid under this contract to be returned if warranty deed and abstract are not furnished as herein provided."

Sometime in April, 1909, one W. R. Jameson, acting as agent for the Land Company, entered into negotiations with the defendant bank to sell it the Todd and Peet notes; and, not later than April 19, 1909, defendant purchased all these notes, which were duly indorsed to it by the original payee. It paid cash for the notes, and took assignments of the land contracts for security. There is some dispute in the record as to the exact date when the bank took over the contracts; but, notwithstanding the claims of some of the bank officers that the contracts were not received until after the purchase of the notes, the record as a whole shows, beyond reasonable doubt, that they are mistaken in this

respect, and that the contracts were, in fact, assigned and delivered to the bank, together with the notes. March 18, 1912, plaintiff made a tender of the full amount called for in his notes, and also the ones executed by Peet, and demanded a deed to the land covered by the contracts. This demand was made of the appellee bank, but it could not make the title; and the money so tendered was deposited in the Delaware State Bank, and afterwards, by written agreement, transferred to the appellee bank. The tender covered the amount due and to become due on the notes at the time it was made. It is stipulated in the agreement under which the tender and deposit were made, as follows:

"Both the State Bank of Edgewood and Levi M. Todd are desirous of avoiding any loss to anyone of the interest on the amount still remaining unpaid on said notes and contracts, and it is therefore agreed between the said State Bank of Edgewood and the said Levi M. Todd, that the amount above stated, offered to be paid by the said Levi M. Todd and by him tendered, which is now on deposit, as above stated, with the Delaware County State Bank, shall be deposited by him with the State Bank of Edgewood under the following agreement and understanding, that is to say:

"That so long as the same is left by the said Levi M. Todd with said bank, the said deposit shall have the same force and effect with relation to the tender and offer of payment above made, as though the same had remained on deposit in the Delaware County State Bank, and the said State Bank of Edgewood agrees to thus accept the same as a deposit by the said Levi M. Todd for the purpose stated, and agrees that so long as the same is left on deposit with said bank, there shall be no interest due or to be collected on the said notes of F. B. Peet and Levi M. Todd, now held by said bank, and to pay which the said amount was offered in payment and so tendered, and each party further agrees

that the making of this agreement to deposit said money with the State Bank of Edgewood, the depositing of the same, and none of the negotiations with reference to this agreement or deposit shall be considered or held to in any way influence or change the rights or interests of either party in the ultimate determination of any question to be determined with reference to the obligations of said Levi M. Todd on said notes, or his rights under said contracts, or his right to demand and receive deed with perfect title to the property purchased under said contract before the delivery and payment of the amount to be paid as evidenced by said notes.

"It is understood that in the final settlement with the American and Canadian Land Company, said company will pay all interest from the time of tender, and it is agreed that such interest when paid shall be for the time the deposit is kept in the State Bank of Edgewood to be by it paid to Levi M. Todd.

"And it is further specifically agreed that the said Levi M. Todd shall have the right to withdraw said deposit at any time that he sees fit to do so, and the said State Bank of Edgewood agrees to pay the same to him on demand at the Delaware County State Bank in Manchester, Iowa."

This action is bottomed primarily on the last paragraph of this stipulation. The agreement was entered into September 23, 1912, and on September 13, 1913, plaintiff demanded the return of his money, which was refused. It appears that the Land Company had title to the Texas land it had agreed to convey to plaintiff and Peet, at the time they negotiated for the same, but it was incumbered by vendor's liens. Todd, however, took up the vendor's liens, so far as they affected the land purchased by him. There is evidence that the Land Company which issued these contracts and sold these notes was solvent and doing

business until February, 1912; but we think it clear that, long before these notes became due, if not, indeed, at the time they were negotiated, the concern was in financial straits, and that, if it remained for some time a so-called "going concern," it was due to the law of nature which keeps a paper balloon afloat until some puncture allows the hot air to escape. When the notes became due, March 18, 1912, and the company was called upon to perform its contracts, it confessed its inability to do so, or to convey the lands free from incumbrance; and whatever title it had to the property has since been lost by foreclosure of prior liens. Before buying the notes, one of the bank officers met the plaintiff, and asked him whether he had any objections to their making the purchase, and he replied that it would be satisfactory to him. Later, on one or two occasions, one of the men representing the bank testifies, he spoke to plaintiff of the advisability of obtaining a conveyance of the land, and says he told him that, if he would make his own notes for the amount direct to the bank, it would turn over to him the notes he had given for the land, and thereby enable him to fix the matter up with the company; but the witness further says that the plaintiff seemed satisfied with the situation as it was, and did not accept the offer made him. As it does not appear that the notes were then due, or that the Land Company was then under any obligation to make the conveyance, it is somewhat uncertain what the plaintiff could have done in the matter; and, as he could not substitute new notes direct to the bank without waiving the benefit of his defense, if any he has, we think it not very material what the truth may be with respect to these interviews. The first of the notes in suit fell due on March 18, 1912; and promptly thereon, plaintiff, with his counsel, visited the defendant bank. What talk passed between the parties at that meeting is the subject of somewhat sharp conflict in the testi-

mony. It is conceded, however, that, as already stated, plaintiff made tender of a sufficient sum to cover the debt; and, upon defendant's statement that it was not prepared to make or furnish title to the land, plaintiff informed the bank's representative that he would deposit the money in the Delaware County State Bank, to be paid over to defendant upon delivery of a deed of conveyance, in accordance with the Land Company's contract. It was this deposit which became the subject of the contract by which the money was withdrawn from the Delaware County State Bank and deposited in the defendant's bank, and on which this action was brought. The defendant answered this claim, denying the plaintiff's right to withdraw the deposit, and, by way of counterclaim, pleaded the notes upon which the plaintiff became liable, and demands a recovery thereon. Plaintiff denies that defendant has any right of recovery as a bona-fide holder of the notes, and insists that he has in this action the same right to demand a conveyance of the land as a condition precedent to the payment of the notes which he would have were the action being prosecuted by the Land Company itself. The contest resolves itself practically into a question whether defendant is entitled to recover the amount of the notes in suit without regard to the fact that the land has never been conveyed as agreed. That plaintiff's defense would be good were the claim being sued by the payee, the Land Company, no one denies; and the question upon which the issue here presented must turn is whether, upon the proved or admitted facts, the defendant is entitled to be considered a bonafide holder, against whom such defense is unavailing. This inquiry arises here in a twofold aspect. In the first place, it sufficiently appears that, before and at the time of the purchase, the managing officers of the bank conducting that transaction knew, or were reasonably well advised, that the notes were given upon contracts for the purchase of Texas

.land. In the second place, it is well established that the bank, at the time it purchased the notes, also demanded and took over to itself the contracts of sale which the Land Company made with the plaintiff and Peet, and in consideration of which the notes were given. Is the bank, under such circumstances, a bona-fide purchaser without notice, within the meaning of the law merchant, or of our statute?

In a carefully prepared opinion, the trial court, having conceded that the assignment of the contracts to the defendant brought to it knowledge of the terms and conditions therein contained, finds, nevertheless, that the case falls within the doctrine of *McNight v. Parsons,* 136 Iowa 390, 392, and other precedents of that class, which hold to the general rule that knowledge by the purchaser of a negotiable instrument that it was given in consideration of an executory contract will not affect his rights as a bona-fide holder unless he also has notice of a breach of such contract. No breach of these contracts having been shown until the notes matured and the company failed to make the conveyance agreed upon, it must be admitted that, if the court was right, that this case is of the same class as the cited precedents, the correctness of its conclusion is indisputable. But in our opinion, the case presented by this record is quite distinguishable from those to which the rule contended for is properly applicable. In the *Mc-Night* case, the question was whether mere knowledge by the indorsee of a note that it was given for personal property sold with a warranty of quality was sufficient to make the note in his hands subject to defense or counterclaim on account of a breach of such warranty, of which breach he had no notice when he bought the paper; and upon that question, we found in the negative. To that holding we still adhere. A large proportion of the negotiable paper which finds its way into the banks or markets of the busi-

ness world has its consideration, to a greater or less ex·
tent, in executory undertakings; and any other rule would
be attended with unfortunate results.  But there is a
marked distinction to be noted between the cases of the
kind just mentioned and those where the note has been
made upon terms by which the performance of an executory
agreement is a condition precedent to the right of the
payee to demand or recover payment.  If such be the con-
tract, then, as between the maker and payee, the latter,
in order to make a case for recovery upon the notes, must
be able to show his performance, or readiness to perform
the condition.  It is equally clear that one who becomes the
indorsee or assignee of such notes, knowing the condition
precedent to a recovery thereon by the payee, takes his
title with the same burden which attached to it in the
hands of his indorser or assignor.  That such is the position
occupied by the defendant in this case, we think there can
be no doubt.  Let us revert, for a moment, to the language
of the contract.  After the agreement on the one part to
sell, and upon the other to purchase, the land at a stipu-
lated price, and for the giving of notes for the deferred
installments of the purchase money, the Land Company's
undertaking to make conveyance is expressed in the fol-
lowing words:

"In consideration of said payments above mentioned
the vendor agrees to convey to purchaser in fee simple,
free and clear of all incumbrances the following described
real estate, to wit: Southeast Quarter Section No. 5 in
Block 6, Randall County, State of Texas, U. S. A.  It is
further agreed that on the date of the last payment men-
tioned herein in case same shall have been fully paid pur·
chaser shall have a warranty deed to the above-described
property, together with an abstract of title showing title
clear and free from all incumbrances in vendor.  Said ab-
stract to be approved by Gustavus, Bowman & Jackson of

Amarillo, Texas, and when so approved to be final and conclusive upon the purchaser and his money shall be due and payable. All money paid under this contract to be returned if warranty deed and abstract are not furnished as herein provided."

It does not differ materially from the ordinary form of agreement or bond for the sale of land, and we set it out in terms only to make clear the applicability of the authorities to which we shall soon call attention. It is a well-settled doctrine in equity that the effect of such a contract is to vest the purchaser with the equitable title to the land (so far, at least, as the seller is able to pass such title), and leaves the seller holding the legal title in trust for the purchaser, to be conveyed on payment of the price. Until both parties are prepared to complete the transaction, the unpaid purchase money in the buyer's hands is his security for the performance of the seller's agreement to convey to him a good title; while, on the other hand, the legal title, remaining in the seller, is his security for the payment of the remainder of the price. 1 Pomeroy's Equity (3d Ed.), Sec. 368. Concerning the mutual rights of a buyer and seller under a contract for conveyance, this court has had frequent occasion to speak. In *School District v. Rogers*, 8 Iowa 315, it is said, "Where it is made to appear that the conveyance [of land] was to be made upon payment of the purchase money, the courts regard the two acts as so far dependent that it is held that, to entitle plaintiff to recover, he must show a performance or offer to perform the contract on his part, unless the defendant has waived a tender of the deed;" and it was held that, in an action upon a note given for the purchase of land, where the seller was to make conveyance upon payment of such note, it was error not to instruct the jury to that effect. See, to the same effect, *Fitch v. Casey*, 2 G. Greene (Iowa) 300, 307. The rule is restated in the same language in *Berryhill v. Byington*, 10

Iowa 223. Even if it be said that the duty to convey, or offer to convey, is not technically a condition precedent, the covenants and conditions are at least dependent and mutual;, and if the buyer cannot claim his deed until he has paid, or tendered the price, neither can the seller sue for the money without tendering the deed. *Barron v. Easton,* 3 Iowa 76; *Lyon v. O'Kell,* 14 Iowa 233; *Courtright v. Deeds,* 37 Iowa 503; *Claude v. Richardson,* 127 Iowa 623; *Sutton v. Griebel,* 118 Iowa 78. Where the seller had undertaken to furnish title supported by an abstract showing it to be good, the performance of the covenant was held to be a condition precedent, and he was not entitled to recover the purchase money until he had complied therewith. *Martin v. Roberts,* 127 Iowa 218, 220. In *American, etc., Co., v. Wood,* 90 Me. 516 (43 L. R. A. 465), the annotator in the L. R. A. report, distinguishing between cases in which a promissory note and a contemporaneous agreement are collateral and independent, and those in which the note and contemporaneous agreement are mutual and dependent, says, in substance, that the difference is that, in the former, it is not the intent of the parties that the performance of the one contract should be dependent or conditional upon the performance of the other. Applying this rule, the same authority classifies a promissory note given for the purchase of land, and the payee's promise to convey the land on payment of the note, as mutual and dependent agreements. Stating the rule in another way, it is said that mutual and dependent agreements depend upon whether they relate to the same subject matter, and whether it was the intent that the performance of them should be simultaneous. That contracts like those involved in the case at bar fall within this class is, as we have seen, thoroughly well settled in this state—a position which has the support of the courts generally. *Goodwin v. Nickerson,* 51 Cal. 166;

2. CONTRACTS: construction: contemporaneous agreements: bills and notes.

*Mix v. Ellsworth,* 5 Ind. 517; *Little v. Thurston,* 58 Me. 86; *Hoag v. Parr,* 13 Hun (N. Y.) 95; *Kessler v. Pruitt,* 14 Idaho 175 (93 Pac. 965); *Sayre v. Mohney,* 30 Ore. 238; *McCulloch v. Dawson,* 1 Ind. 413; *Kelly v. Webb,* 27 Texas 368; *Naftzger v. Gregg,* (Cal.) 31 Pac. 612. In short, as between the parties to the contract, it is perfectly clear that both the contracts made, each in connection with or in consideration of the other, are to be read together, in determining the mutual rights of 'such parties, and neither can recover against the other without performance or tender of performance on his own part of their mutual covenants. It is not to be denied that, if a note so made is negotiable in form, and is, in fact, negotiated before due and for value, to an indorsee who receives it without notice of the conditional character of the promise to pay, he will be protected as an innocent purchaser, and may enforce collection of the note, notwithstanding the failure of the payee to perform his agreement by the conveyance of the title. But it is very difficult to understand upon what theory the defendant in this case can bring itself within the benefit of that rule. As the purchaser of the note, and the assignee of the contemporaneous contract, it had perfect and complete knowledge of the contract between the parties; and, as a matter of law, it must be held to have known and understood the mutual dependency of the maker's agreement to pay, the payee's agreement to convey, and that, as between these parties, the payee could not enforce payment without proof of its performance, or of its readiness and willingness to perform. If the payee could not collect the note without such showing, by what rule, or upon what principle, can the indorsee, taking the paper with knowledge of the rights and equities of the maker as against the indorser, hope to stand in any better right? Had the contract and the accompanying note been written together,—both upon the same sheet of paper,—and in that form indorsed and

delivered to the bank, counsel would hardly argue that, by suing upon the note alone, it could exclude the defense thereto which is asserted in this case and founded upon the entire agreement. See *Goodwin v. Nickerson*, 51 Cal. 166. But so long as it is conceded, as it must be, that the note was but a part of the contract, and that defendant knew the fact, it is perfectly immateral whether it was written all upon the same sheet or whether the mutual and dependent covenants were written on separate sheets. It is scarcely necessary to cite authorities to this proposition, which is entirely clear upon principle; but it may be said that the proposition is directly affirmed in *Thomas's Assignee v. Page*, 3 McLean (U. S.) 167, where it was held that a note, though absolute in form, may, by a separate agreement between the parties, be made payable on condition; and, in the hands of an assignee or indorsee with knowledge of the condition, it takes effect the same as between the original parties. See also *Sutton v. Beckwith*, 68 Mich. 303 (36 N. W. 79). We conclude, therefore, that defendant was a holder of the note and of the contemporaneous contract between the original parties, charged with notice of the equities in favor of plaintiff.

We cannot see how defendant's claim of having advised plaintiff to take up these notes before due, giving other notes direct to itself, and then adopting measures to compel the Land Company to make title to the land, materially affects the relative rights of the parties. The notes in suit were not due, and, as we have seen, defendant had acquired them with knowledge of the equities in plaintiff's favor, and the latter had the right, against either or both, to resist payment until title to the land was conveyed or tendered to him. To have acted on the defendant's suggestion would have been to abandon his defense against the bank and pay its claim in full, leaving him only a remedy without value against the bankrupt payee. He could rightfully

insist upon the time which his contract gave him for the payment of the debt, and rest upon his right to demand a deed of the land, before surrendering his money to the payee or to any holder of the paper receiving it with notice of the facts. This is not saying that the defendant bank, by taking an assignment of the land contract, bound itself to perform the agreement to convey, or that plaintiff could maintain an affirmative action against it for specific performance of such contract. It is enough to say, in this respect, that, by taking an assignment of the contract, thereby acquiring the Land Company's vendor's lien, it became charged with knowledge of the plaintiff's rights, and took upon itself the risk of the consequences which might follow if its assignor failed to convey the title, if it had any. True, plaintiff could also have sought such relief when his notes became due; but he had an equal right, having tendered performance on his part, to assume a purely defensive attitude. This he has done, and we find nothing in the record indicating any waiver of such right.

The authorities cited by appellee are almost entirely of the class of *McNight v. Parsons,* supra, to the effect that mere knowledge by an indorsee of a negotiable note that it was given in consideration of an executory contract of some kind is not sufficient to deprive him of the character of a bona-fide holder; but, as we have tried to show, this proposition is not at all inconsistent with the view we have expressed of the effect of the knowledge by the indorsee that the note is but one of two mutual and dependent agreements between the maker and the payee, neither of which may be enforced without performance of the other.

There was no apparent lack of diligence on the part of plaintiff. It is shown that, on the day when the notes matured, plaintiff, with his counsel, went to the defendant bank, and, having tendered full payment, asked that title to the land for which the notes were given be conveyed

to him.   The bank not being able to comply with this de-
mand, the tender was deposited, as we have already seen;
and, on the following day, plaintiff appeared with his coun-
sel at the office of the Land Company, and there demanded
a conveyance in accordance with the contract; and the com-
pany was unable to comply.   Foreclosure proceedings, by
which the company lost what title it had, were begun in
Texas within a few days thereafter.   Though disputed, a
preponderance of the evidence.is to the effect that, at the
time the tender was made, the bank, by its officers, admitted
plaintiff's right to demand conveyance before parting with
his money; but such admission, if made, has little, if any,
material effect upon the rights involved in this action, such
rights depending, in our judgment, upon the effect of the
contract between plaintiff and the Land Company, and the
mutual and dependent conditions thereof, with knowledge
of which the defendant received the notes.

We regard it as being clear, also, that
3. CONTRACTS:  the fact that, when the notes were received
construction:
contemporane-  by the bank, the conveyance to the plaintiff
ous agree-
ments.         by the Land Company was not yet due, does
not avoid the effect of the rule we have just
stated.   If this were a case of mere failure of considera-
tion, arising from the failure of the payee to perform a col-
lateral independent contract, there would be reason for
the other conclusion; but, in cases of mutual dependent
agreements, each party secures himself against loss from
failure on the part of the other, by a contract which requires
reciprocal and simultaneous performance by both.   This
agreement qualifies and conditions the liability of the parties,
and that condition inheres in and qualifies the obligation of
each from the inception of the contract relation; and he
who acquires a promissory note having such origin, with
knowledge of the fact, takes it subject to the conditions

upon which it was given.   In the language of the Michigan case last cited:

"It has been well settled, in this state and elsewhere, that several instruments made at one and the same time, and having relation to the same subject matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties. * * * If the plaintiff had been a good-faith holder of the note, with no knowledge of the bond, he would have been entitled to recover, because of the negotiable form of the note.   But if he purchased the note before due, and before the time of performance stated in the bond, with the agreement attached to it and forming a part of the contract, he would be obliged, under the law, to take the note as qualified and controlled by the bond or agreement.   And if he saw the bond before he purchased the note, and was acquainted with its relation to the note, he must be considered as bound by it, the same as if it had been attached to the note, or written upon the same piece of paper."

See also *Brooke v. Struthers*, 110 Mich. 562 (68 N. W. 272, 275) ; *Jacobs v. Mitchell*, 46 Ohio St. 601 ; *National Hardware Co. v. Sherwood*, 165 Cal. 1 (130 Pac. 881, 883) ; *Constcrdine v. Moore*, 65 Neb. 291 (96 N. W. 1021) ; *Garnett v. Mcyers*, 65 Neb. 280 (91 N. W. 400) ; *Zebley v. Sears*, 38 Iowa 507.

There is still another angle from which this feature of the case may be considered.   Defendant, as assignee of the contract, acquired the vendor's lien held by the Land Company to secure these notes.   Let us suppose that, instead of seeking to recover in some other form of action, it had brought suit upon the contract alone, or upon the contract together with the notes, and plaintiff had appeared thereto, pleading his tender of performance and the failure of both the defendant and the Land Company to perform the agreement to convey: could the bank, in such proceeding,

have successfully relied upon its claim of being an innocent
holder of either the note or contract? If not, can it, by
ignoring the contract in its own hands, escape its effect
by suing upon the notes alone? We think not.

II.   Neither can we find anything in
the record on which the defendant can base
a plea of estoppel. If plaintiff declined to
act upon defendant's advice to pay the
notes, and to give new notes direct to the
bank and take his chances of compelling the Land Company
to give him title to the land, he was, as we have before
said, entirely within his rights. He could properly plant
himself upon the terms of his contract; and, so far as we
are able to discover, he complied literally with the obligation
he had therein assumed. The situation affords no oppor-
tunity for the application of the rule that, where one of
two innocent persons must suffer, the loss must be borne
by the one by whose negligence it happened. As between
the one party to mutual and dependent agreements who
promptly tenders full performance in his part, and the
other party who fails or refuses to perform, there is no equal-
ity of legal or equitable merits, nor does the indorsee or
assignee of the party in default, with notice of the char-
acter of the contract, stand in any more favorable position
than his indorser or assignor.

III.   Appellant argues the question whether the cir-
cumstances in this case are not such as to cast upon the
defendant the burden of proof that it is a purchaser of the
notes in suit in good faith, for value, and in due course of
business. ` The point thus made is, in substance, that the
Land Company, having entered into this contract with the
agreement that, upon payment of the notes, it would convey
a good title, could not, without breach of faith, put the notes
upon the market, and expose plaintiff to the liability to pay
them to innocent holders, while such company did not have

4. ESTOPPEL:
equitable estop-
pel: assert-
ing legal
right.

the title which it agreed to convey, and was not in position or able to perform such agreement.

As we have reached the conclusion that the record sufficiently and affirmatively shows the defendant to be a holder of the paper with notice, it is unnecessary to extend this opinion for the consideration of the proposition so made. That the negotiation of a note for the purpose of depriving a maker of the benefit of a good defense, or the putting in circulation of a note without being accompanied by a contemporaneous agreement affecting the maker's liability on such paper, may be a fraud, has been often held; but whether the facts of this case bring it within the rule is a question which, for the reasons stated, we do not determine.

For like reasons, we pass without consideration the question whether the writ of attachment sued out by the defendant was wrongful.

IV. This case, as originally brought, was entitled as a suit in equity. The answer and cross-petition, or counterclaim, were entitled in like manner. In each pleading, the parties ask for general equitable relief. The issues were tried to the court as in equity, without objection on either side. In this court, the appellee raises the question that the issues were, in fact, not of an equitable nature, and asks to have the finding below treated as the verdict of a jury. It has been decided too often to be longer an open question that, where a case is brought and tried as a suit in equity, without any objection thereto in the lower court, such objection will not be considered by this court upon appeal. *Gate City Land Co. v. Heilman,* 80 Iowa 477; *Lough v. City of Estherville,* 122 Iowa 479; *Des Moines Sav. Bank v. Morgan Jewelry Co.,* 123 Iowa 432; *Blondel v. Ohlman,* 132 Iowa 257; *Niemand v. Seemann,* 136 Iowa 713; *Reiger v. Turley,* 151 Iowa 491. It

5. APPEAL AND ERROR: review, scope of: causes tried in equity reviewable in equity.

is not, as counsel seem to think, a question of jurisdiction, which may be raised at any time. The case was brought in the district court, and the district court had jurisdiction of the parties and of the subject matter. Whether it be triable to the court as in equity, or to a jury as at law, is merely a question as to the manner of trial and the relief which may be administered. If either party thinks that the case should be docketed for trial in equity instead of at law, or *vice versa*, it is his privilege to move for such order. If he fails so to do, no exception thereto taken on appeal is entitled to consideration. The case must be treated as one in equity, and the trial here is *de novo*.

The decree of the district court is reversed, and the cause remanded, with direction for the entry of judgment in plaintiff's favor for the recovery of the amount of his deposit in the defendant bank, subject only to the following condition, relating to the amount thereof, and to the counterclaim pleaded by said defendant. It being claimed by the defendant in argument that plaintiff has acquired from another source title to the land for which the promissory notes set up in the counterclaim were given, and that he has acquired such title at a cost or expense materially less than the price of said land, as fixed by the contract of purchase with the American & Canadian Land Company, which contract, together with said notes, was assigned to the plaintiff, and it being further claimed that, by reason of his acquirement of the outstanding title at a reduced price, plaintiff's loss or damage because of the failure of title in said American & Canadian Land Company has been lessened in like proportion, and that his recovery should not exceed the amount of such actual damage, and the record before this court not clearly or satisfactorily showing the truth as to the facts so asserted, it is therefore ordered that, upon the remand of this cause, the trial court shall proceed to ascertain and determine the facts with reference to said

claim, and, if it be found that plaintiff has acquired such title, and that the cost or expense of procuring the same, together with the amount of the payments, if any, made to said American & Canadian Land Company or its assignee, before this suit was brought, is less than the price agreed to be paid to said company, then the difference so ascertained shall be treated and applied as a credit in favor of the defendant bank, and plaintiff's recovery upon his deposit account shall be reduced by the amount of such credit. If, however, such alleged credit is not established on the hearing, then judgment shall be entered for the plaintiff for the amount of his deposit, without deduction. At the hearing upon said question of fact, the parties, if so advised, may offer additional relevant testimony; but such hearing and testimony shall be confined and limited to the single question herein indicated.—*Reversed.*

GAYNOR, C. J., LADD, EVANS, PRESTON, and STEVENS, JJ., concur.

SALINGER J. (dissenting).—The sole question is whether the majority is justified in holding that the facts here create an exception to a confessed rule. Hundreds of cases have built up the rule.

In *McNight v. Parsons,* 136 Iowa 390, at 392, that rule is stated as follows:

"The courts quite universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the endorsee of the character of a bona-fide holder, unless he also has notice of the breach of that agreement or contract."

The collateral agreement in the case was a warranty of the animal for the purchase price of which the note was given, and a further agreement by the seller that he would retain possession of the animal for several months, and do

certain things to enhance its value. The agreement, the sale, and the giving of the note, were all parts of the same transaction.

In *Jennings v. Todd,* 118 Mo. 296 (24 S. W. 148), all the papers were made at the same time, and related to the same transaction. The collateral agreement was that the payee was to do certain things, and that the note should not be paid if it failed to fulfill any part of this agreement. Against defense to the note, the court said:

"We think, however, that no well-considered case can be found in which a collateral, contemporaneous agreement, providing that the note should not be paid in event that an executory contract, which was the consideration of the note, should not be performed, has been allowed to defeat the negotiability of the note in the hands of an endorsee, though he have notice of such agreement."

In view of these, it will suffice to cite but a few of the great number of cases affirming this rule. See *Kinkel v. Harper,* 7 Colo. App. 45 (42 Pac. 173) ; *Davis v. McCready,* 17 N. Y. 230; *First Nat. Bank v. Michael,* 96 N. C. 53 (1 S. E. 855) ; *Moyses v. Bell,* 62 Wash. 534 (114 Pac. 193) ; *Hakes v. Thayer,* 165 Mich. 476 (131 N. W. 174) ; *Houston v. Keith,* 100 Miss. 83 (56 So. 336) ; *Merchants' & Planters' Bank v. Penland,* 101 Tenn. 445 (47 S. W. 693).

The contract upon the execution of which the notes in dispute were given, recites that, in consideration of the payment of said notes, the vendor agrees to convey certain lands in fee simple, free and clear of all incumbrances; that, when all the notes have been fully paid, a warranty deed shall be made, and an abstract furnished, showing title free and clear from all incumbrances in the vendor; and that all money paid under the contract is to be returned if warranty deed and abstract are not furnished, as provided in the contract. As I experience much difficulty in understanding what there is about this transaction

and collateral agreement to justify the majority in making
an exception of this case, I shall attempt to clarify myself
by elimination—by pointing out in what respects the situa-
tion here does *not* work an exception. The rule applies to
nothing but considerations formed by an executory agree-
ment. Can it be said that the contract here is not an execu-
tory agreement? It is so manifest that it is a promise
not yet performed as that I shall assume the majority does
not ground its opinion upon the claim that the agreement
is not executory. Can it be the majority thinks the general
rule does not apply because the promise is one to convey
land? I can scarcely believe so, because the books are
full of cases where the buyer of the note was protected,
though the consideration was just such a promise. *Amer-
ican Funding Cor. v. Pennington,* 107 Miss. 10 (64 So.
845) ; *United States Nat. Bank v. Floss,* 38 Ore. 68 (62 Pac.
751) ; *Merchants' & Planters' Bank v. Penland,* 101 Tenn.
445 (47 S. W. 693). Is its reason that the contract and the
notes here were contemporaneously made, and are part of
the same transaction? I can hardly think that either, be-
cause that was the situation in *McNight v. Parsons,* 136
Iowa, at 392, and in *Jennings v. Todd,* 118 Mo. 296 (24
S. W. 148), and, for that matter, in practically all the cases
wherein the rule was applied. Is it thought that here is an
exception because the payee promised to give perfect title
as soon as all the notes were paid, and expressly stated
what the law implies; that he would convey when all the
notes were paid, or repay all the buyer had paid if there
was a failure to give such title after the notes were paid?
Concede, if you please, that this, in a sense, makes an inter-
dependent contract, and involves reciprocal promises, and
still the case remains within the rule. Call the transac-
tion what you will: still the voice of authority says such
interdependence and such reciprocal promises as are found
here do not affect the buyer of the notes. These reciprocal

promises create an adequate consideration, but have no other effect, except to assure the buyer of the note that he is to be paid by the maker whether the promise to the maker be or be not kept. It absolves him from inquiry whether the payee of the note will perform his contract, and he may assume that he will. *Houston v. Keith,* 100 Miss. 83 (56 So. 336); *Hakes v. Thayer,* 165 Mich. 476 (131 N. W. 174); Tiedeman, Commercial Paper, Sec. 300. By selling the note, the maker declares he will pay it to the endorsee though the consideration should fail as to the payee. *Siegel, Cooper & Co. v. Chicago Trust & Sav. Bk.,* 131 Ill. 569; *Jennings v. Todd,* (Mo.) 24 S. W. 148. In *Whitehead v. Purdy,* 172 Mich. 31 (137 N. W. 684), there were recip- rocal promises, and there was an express agreement that, if the promise was not kept, the maker of the note should be reimbursed in full. The note was sold to one who had full knowledge of this agreement. At the time of the sale, it was impossible to determine whether the contract of the payee could be performed as was agreed. But a verdict for plaintiff was directed, because the case presented no more than that the makers of the note were willing to give it to secure what the payee promises, in reliance upon his agree- ment to indemnify and reimburse them for what they had paid on their notes, if the collateral agreement was not kept. And see *Kinkel v. Harper,* (Colo.) 42 Pac., at 176; *Sadler v. White,* 14 La. Ann. 177. The rule was applied in *Davis v. McCready,* 17 N. Y. 230, where it is expressly found no exception is worked because the consideration is "founded upon reciprocal promises of the parties." And in *United States Nat. Bank v. Floss,* (Ore.) 62 Pac. 751, the payee stipulated just as here, to wit: that, upon payment of the note at maturity, he would convey to the maker by good and sufficient warranty deed. In *Jennings v. Todd,* (Mo.) 24 S. W. 148, the note collected by the buyer itself recited it should not be paid if the payee did not fulfill

every requirement of the collateral contract.

To the difference between these notes and what the law terms a conditional note, I shall address myself later. All that it is necessary to say at this point is that the reciprocal nature of the engagements can have no effect here. The maker was bound to pay all the notes before he was entitled ·to a conveyance. Although upon payment he was thus entitled, he could not defend against either note because no conveyance had been made for the self-evident reason that, no matter how reciprocal the promises were, as payment must precede conveyance, failure to convey was no· reason for not paying.

Such· agreements create a condition subsequent which cannot· affect the buyer of the note. By making a negotiable note, the maker says, in effect, "If anyone shall buy this note, let him be advised that I have confidence the payee will perform the agreement for which I gave the note. If he shall fail, I will obtain redress for the breach of contract." *Siegel's* case, 131 Ill. 569. It is said in *Jennings v. Todd*, (Mo.) 24 S. W. 148:

"In purchasing such note no inquiry as to the consideration is required. If a failure of consideration occur, the maker must look to the payee for indemnity."

And in *Sadler v. White*, 14 La. Ann. 177:

"Anyone having sufficient confidence in another to give his written obligation for something to be given or enjoyed hereafter, is at liberty to do so, and the maker cannot censure any future holder of the note for having purchased it, and for seeking to hold him liable; for it was the faith of the maker in the payee that· he would execute his promise and allow no obstacles to defeat it that created the note and gave currency to it."

Can it be a difference is found because the buyer of the notes here was advised by inspection of the contract itself that it was what it was? Can it make a difference

how such knowledge is acquired? It seems to me the rule
must be the same whether the buyer is advised of the exist-
ence of the executory contract by statement on part of
those who profess to know the fact, or gets his information
by reading the contract itself. In both cases, nothing is
accomplished except that the buyer has notice of the agree-
ment. If this self-evident proposition is not to be agreed
to unless supported by authority, that is not lacking. The
purchaser of the note has been protected where the note
itself advised him that its consideration was an executory
contract. *Houston v. Keith,* 100 Miss. 83 (56 So. 336);
*Moyses v. Bell,* (Wash.) 114 Pac. 193; *Henneberry v. Morse,*
56 Ill. 394. In *Jennings v. Todd,* (Mo.) 24 S. W. 148, the
note itself recited that it should not be paid if the payee
did not fulfill every requirement of the collateral contract.
The purchaser has had the benefit of the rule where he saw
a recital in the bond itself of what consideration it was
given for. *First Nat. Bank v. Michael,* (N. C.) 1 S. E.
855. And it is said in *Siegel's* case, 131 Ill. 569, citing
*Henneberry v. Morse,* 56 Ill. 394:

"The most that can be said of a recital in the instru-
ment itself, of the consideration upon which it rests, is that
the endorsee, taking it before maturity, is chargeable with
notice of the recital."

And see cases in note to *Kimpton v. Studebaker Bros.
Co.,* 14 Idaho 552 (14 Am. & Eng. Ann. Cas. 1126).

Every factor thus far considered was present in the
cases wherein knowledge that the note had for its consid-
eration an executory contract was not allowed to defeat
the collection of the note. But in many of these cases,
one factor was absent that is present here, and that is that
the buyer of the note took an endorsement of the note, and
also took an assignment of the contract itself, as further
security. Now, in the first place, taking possession of the
contract added nothing to notice. So far as the general

rule is concerned, the buyer of the notes was as much affected by obtaining hearsay knowledge that the executory contract existed as he would by seeing it in the contract of which he took possession. The majority refers to some cases to the effect that, when a note and mortgage are made contemporaneously, the two must be construed together, and that, in jurisdictions where a note secured by mortgage is nonnegotiable, the buyer of the note is affected by conditions in the mortgage which limit the obligation of the note, and that, even though the note be negotiable, such conditions in the mortgage may be used in defending against the note, if the buyer had knowledge of the provisions of the mortgage. See *Briggs v. Crawford,* 162 Cal. 124 (121 Pac. 381) ; *National Hardware Co. v. Sherwood,* 165 Cal. 1 (130 Pac. 881) ; *Garnett v. Meyers,* 65 Neb. 280 (91 N. W. 400) ; *Consterdine v. Moore,* 65 Neb. 291 (96 N. W. 1021) ; *Brooke v. Struthers,* (Mich.) 68 N. W. 272; *Jacobs v. Mitchell,* 46 Ohio St. 601 (22 N. E. 768). I concede their holdings, but challenge their applicability here. I am in no doubt that one who buys a contract and assumes to become a party to it is bound to perform it, and, if failure to perform causes a loss to the other party, he may offset that loss when the buyer of the contract sues upon the note which he has bought, though he also bought the contract which is the consideration for such note. The trouble lies with the premise. The buyer of the notes here did not buy the contract. He did not agree to become a party to it. He did not assume any of its obligations. He took it purely as an additional security. Such taking does not change the rights the rule gives him. See *Moyses v. Bell,* (Wash.) 114 Pac. 193; *Kinkel v. Harper,* (Colo.) 42 Pac. 173. As well say that, if a bank takes a bond as collateral to the note of a borrower, and has it endorsed for that purpose, that it becomes obliged to pay the bond if the maker fails to do so. Taking an endorsement of the note gave the buyer

the right to collect from the maker, and, in certain contingencies, from the endorser.   When it took an assignment of the contract, it merely obtained a further security, consisting of a species of lien upon the interest both parties to the contract had in the land covered by the contract. Instead of becoming bound by the agreement to convey good title to land the transfer of the contract worked merely that, if the buyer of the notes had need to resort to the land, he might resort to it; that, in such event, he could make any deficiency out of the land, if the land was worth it and the title of either party to the contract was good; and if there was no deficiency, or if it could not be made out of the land, the assignment of the contract would prove to be no additional security.   It was never before held, and, unless it be done here, in my opinion never will be held, that the general rule which protects the buyer of the note, though he knew its consideration was an executory contract, is abrogated because the buyer takes security additional to what the mere signing and endorsing of the note gave him.

I have no complaint to make of the pronouncement of the majority that, where a note is conditional, whosoever buys it with knowledge of the condition is bound by that knowledge, unless that this is so is to be an argument for holding that the notes in suit here are conditional notes, within the meaning of that rule.   There is nothing in *Thomas's Assignee v. Page,* 3 McLean (U. S.) 167, and *Sutton v. Beckwith,* 68 Mich. 303 (36 N. W. 79), the only cases cited in the opinion for this point, which in the least attempts to destroy the general rule by holding that the notes here are conditional ones.   They are conditional only in the sense that paying them is not the end, and that if, after payment is made, the contract is breached, the money paid may be recovered back.   If that makes the notes conditional in such sense as that knowledge that the consider-

ation is an executory contract affects the buyer, then there never was any substance to the confessed general rule. Every note upheld under that rule was, in that sense, conditional. I have called attention to a number of cases wherein collection was enforced, though the very note stated that payment was to be made if the payee did certain things. See *Siegel, Cooper & Co. v. Chicago Trust & Sav. Bk.*, 131 Ill. 569 (23 N. E. 417); *National Bank v. Cason*, 39 La. Ann. 865; *McCarty v. Howell*, 24 Ill. 341; *First Nat. Bank v. Michael*, (N. C.) 1 S. E. 855; *Davis v. McCready*, 17 N. Y. 230; *Kinkel v. Harper*, (Colo.) 42 Pac. 173; *Moyses v. Bell*, (Wash.) 114 Pac. 193. A conditional note which one having knowledge of the conditions cannot enforce, is one wherein the condition makes it uncertain whether the note can ever be collected, or when the obligation to pay it will mature. Here, there is no uncertainty in either respect. The only uncertainty is whether, after they are paid on the day they come due, the original payee will not find that the maker has a right to be reimbursed for what he has paid.

The transaction at bar is not against public policy. *Whitehead v. Purdy, supra.* The enforcement of the rule is a salutary help to the transaction of business. *Jennings v. Todd, supra.* That is why the "Bohemian Oats" cases are not in point. In *Merrill v. Hole*, 85 Iowa 66, at 71, 72, it was complained that the court should have met a claim that mere notice of what the consideration was would not defeat an innocent buyer, and the answer was:

"There is no claim that mere notice that the consideration was the sale of oats and a bond would be notice of want or failure of consideration, but it is that notice of that kind of sale and bond would be, because of their being illegal and void."

In other words, when a buyer knows that the note he buys rests upon an illegal consideration, he is not an inno-

cent purchaser. It is all met by the elementary proposition that interchange of agreements is nothing illegal, and, on the contrary, is a valid agreement and consideration. The contract involved in this case is not "this kind of sale and bond." It is one which the authorities have always held not to affect the buyer. And it is said in *Hakes v. Thayer*, (Mich.) 131 N. W. 174, distinguishing Bohemian Oats cases, that, as to a contract which is lawful, the buyer of the note need not inquire "whether the seller has performed his agreement or will be able to perform."

As to numerous cases cited by the majority in support of the fact that the notes and contract were mutual and dependent agreements; that it was the intent that performance of both should be simultaneous; that, as between buyer and seller, the two things are interdependent; and that the buyer need not pay unless the seller conveys: I submit that any reliance upon these begs the whole question, by assuming against the conceded general rule that, because these things are so between the original parties, therefore they control the rights of one who buys the notes.

As to the argument that the buyer of the note would have been subject to the conditions of the contract if the note and the contract had been one piece of paper, and that paper had been endorsed, answer is that the papers are not in that condition, and, consequently, were not endorsed while in that form. Another answer is that, in the supposed case, the buyer would not be subjected to defenses because he had knowledge that the obligation rested upon an executory agreement, and such agreement was breached by the payee of the notes, but because what he bought was nonnegotiable, which, as a very necessary consequence, and of itself alone, explains why, in the supposed case, the buyer would not have the status that I think he should have in this case.

It seems to me that here is another instance of assert-

ing a nonexistent distinction for the purpose of abrogating a rule while ostensibly affirming the rule; that nothing takes this case out of the confessed rule; and I would affirm. If *Zebley v. Sears*, 38 Iowa 507, is opposed,—and I do not think it is,—it should be overruled; and that the *McNight* case does, in effect, overrule it.