## LAYNE–BOWLER CHICAGO CO. et al. v. CITY OF GLENWOOD, IOWA.

Circuit Court of Appeals, Eighth Circuit. September 11, 1929.

No. 8446.

H. M. Logan, of Glenwood, Iowa, for appellants.

N. S. Genung, of Glenwood, Iowa (Genung & Genung and C. E. Dean, all of Glenwood, Iowa, on the brief), for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

DEWEY, District Judge. This is an action at law brought by the city of Glenwood, Iowa, against Layne-Bowler Chicago Company, and its surety, to recover payments made under a contract for the construction of a deep well which the city claims was by the above-named company as contractor abandoned and breached.

On March 13, 1925, said city and the Layne-Bowler Chicago Company entered into a written contract whereby the latter agreed to furnish all the material and do all the work in drilling a well in and for the city of Glenwood, Iowa. The well was to be of such depth as might be necessary to secure a minimum pumping capacity of 200 gallons per minute, and the contractor expressly guaranteed that the well would produce not less than 200 gallons per minute for a period of not less than one year after the completion of the well.

The contract also provided that the contractor would furnish a bond in the full amount of the contract to indemnify and reimburse the city for money paid on estimates; also that the well should be commenced within 30 days after the execution of the contract and that the contractor should have the right, if after making preliminary tests, or at any time during the prosecution of the work, the project should appear futile and further efforts useless, or for any other good and sufficient reason in the judgment of the contractor, to remove from the works its tools, machinery, and material upon repayment by it of any sum of money paid to the contractor on account.

At about the same date, in compliance with said agreement, the contractor furnished a bond secured by the defendant American Surety Company, conditioned to indemnify the city against any loss or damage by reason of the failure of the principal to faithfully perform its contract; and providing that "no claim, suit or action shall be brought against the principal or security after the 31st day of December, 1926, nor shall recovery be had for damages accruing after that date."

The contractor started the work in April, 1925, and the work was continuously prosecuted until the latter part of July of that year; and from January, 1926, until September 27, 1926.

On September 27, 1926, a test was made of the well. Mr. R. E. Garrett, secretary of the company, made a trip from Chicago to be present when the test was made. The city council was present at this test. The test showed maximum gallons per minute to be 70 gallons, and the minimum was 40 gallons. It took about 30 minutes to reach the minimum.

After the test Mr. Garrett there stated that the contract had not been fulfilled and that the well was a failure, and that it was foolishness to try to put a well there. He also stated that he had no authority to say what the company would do, but that he would return to Chicago and take the matter up with other members of the firm and make report. The well at that time was 1,700 to 1,900 feet deep.

No work was done on the well after the test of September 27, 1926, until October 8, 1926, when the men returned to the pump and finished taking it out of the well and discontinued the work.

The next day after the pump was removed from the well and on October 9, 1926, Mr. F. W. Kelley, mayor of Glenwood, wrote a letter to the contractor company advising that, as the test of the well on September 27, 1926, proved the well unsatisfactory as to the quantity of water delivered, the well was a failure and that this was admitted by Mr. Garrett, and that the city council had taken action to reject the well as not conforming to the requirements of the contract; and he asked that the Chicago Company refund $14,000.01 which had been paid to it on estimates.

On the same day he wrote a similar letter to the American Surety Company.

On October 13, 1926, the mayor received a letter from the manager of the Chicago Company stating that they would report to him further within a few days. And on October 19, 1926, a similar letter was received by Mr. Kelley from the American Surety Company.

On November 8, 1926, Mr. Kelley received a letter from a firm of attorneys in Chicago, as follows:

"Hon. F. W. Kelley, Mayor of the City of Glenwood, Glenwood, Iowa.

"Dear Sir: We represent the Layne-Bowler Chicago Company who have referred to us the matter of their contract with the city of Glenwood for the production of a water-well, together with their complete files and data in connection therewith.

"They have also turned over to us your letter of October 9th, and a copy of a letter of the same date to the American Surety Company of New York. We have examined the same carefully and have also examined the original contract, and copy of the bond furnished the city of Glenwood, in this case, and have come to the conclusion, and have so advised our clients, that in all probability they have a good defense to pay any claim made by the city of Glenwood for the $14,-000.00 paid to our client by the city of Glenwood. Our client advises us, however, that regardless of any technical defenses that might be raised to the claim, they are disposed to live up strictly to the spirit of the contract, provided you are willing to meet them half way and co-operate with them. This work in your city has been a great loss to them. They have expended up to date approximately $32,000.00 in an endeavor to give you water, and as you know they have made every effort (far more than the contract contemplated) to give you the service required. They do, however, desire at least as much time in paying this money back, if it is to be paid back, as was occupied in the expenditure of the money. You realize that the contract does not stipulate the depth at which pumping is to be done, and if the pumping is now done at the proper depth the 200 gallons per minute can be produced, without question. The expense of pumping at such a depth, however, would be very large to your city, for all time to come, and might be prohibitive. It would seem, therefore, that our client should receive every consideration, in view of the premises. If the city is willing to accept payments at the rate of $500.00 per month, which we deem equitable and fair, we think it might be arranged forthwith, or if you prefer we would be glad to discuss the matter with you in Chicago, or meet you in Omaha for that purpose. We have every disposition to secure a settlement of the matter satisfactory to the city, and to our client. All of the above is without prejudice to any of the rights of defense that our client may have, and is not to be construed as a waiver of the same, but as an attempt to amicably adjust a contested claim.

"After you have considered the matter with your counsel, we should be glad to hear from you further.

"Yours very truly,
[Signed]
"Eastman, White, Hawxhurst & Lind."

The city refused to accept this offer, and on November 29, 1926, Mr. Kelley received a telegram from the defendant company as follows:

"Layne-Bowler Company has decided to do further drilling and make further tests. Their letter follows."

On December 23, 1926, this suit was started to recover $14,000.01 which had been paid to the contractor on estimates, and on the ground that the defendant contractor had breached its contract and that the city was entitled to recover for the advancements made by it under the terms of the contract.

The case was tried to a jury, and evidence showing the foregoing facts was introduced. The statement that the pump was taken out and the work discontinued on October 8, 1926, was introduced by the defendants; their only witness being J. D. Whitener who testified that he was the well-driller employed by the Layne-Bowler Chicago Company and that within two weeks after the test was made, and on October 8, 1926, that "we returned to the pump and finished taking it out of the hole when it would not produce the required amount—October 8th, I guess, 1926. About two weeks after the test. We took the pump out and discontinued the work."

At the close of the evidence the court directed the jury to return a verdict for the plaintiff, and judgment was entered on the verdict in favor of the city for $14,000.01, together with interest thereon.

The plaintiff claimed in its petition that the defendant had failed to produce a deep well with the capacity of 200 gallons of water per minute and had breached the contract.

The main contention of the defendants, appellants here, was that the contractor was entitled to a reasonable time to fulfill his engagement.

It appears to be the thought of appellants that no breach of the contract could be had until after reasonable time within which the contract might be performed. And during the trial there was an effort by the defendants to show that on December 8, 1926, the contractor company returned to the work on the well and continued the work until April, 1927.

The bond furnished by the contractor provided in effect that no suit thereon could be brought after December 31, 1926. The contractor thereby declared a purpose and fixed a time for the completion of the work, and upon failure to renew the bond is estopped from claiming a right to continue the work after that date.

Where written instruments are made a part of one transaction they will be read together and each will be construed with reference to the other. Todd v. State Bank of Edgewood, 182 Iowa, 276, 165 N. W. 593, 3 A. L. R. 971.

The contractor then agreed to have this well completed and furnishing a certain amount of water by December 31, 1926.

The position of the contractor was, as shown by the letter of November 8, 1926, that the well as then constructed would produce the maximum amount of water required under the contract if a pump were placed in the well at a greater depth than it was when the test was made; and that the well as then constructed complied with the contract.

Yet on the trial in 1928 it was admitted that the well was never completed:

"The Court: There is no claim that this well is now completed?

"Mr. Logan: No, there is not.

"The Court: It is agreed that the defendant contractor received the amounts of money which it is charged in the petition?

"Mr. Logan: Yes, sir."

Decision then as to questions of rescission and abandonment, or whether the contractor had reasonable time to complete his contract, is unnecessary.

The suit was to recover for advancements under the provisions of a contract which provided that they would be repaid if the well to be constructed did not produce a certain amount of water.

The evidence is undisputed that the well as constructed did not at the time of the trial and about three years after the work was started, and long after December 31, 1926, produce the amount of water required by the contract.

No plea of abatement was interposed.

The defendant contractor then has failed to comply with his agreement and under the terms of the agreement must repay the money received from the plaintiff city.

Appellants further claim that the petition does not set out a cause of action, and the surety company assigns as error the failure of the court to release the surety company by reason of the failure to furnish written notice of the breach within ten days after the same was known.

These assignments of error, as well as many others made by the defendants, were not raised at any time in the court below, except by a motion which is called a motion in arrest of judgment and to direct a verdict for defendants, filed after the close of plaintiff's evidence. Just how the court could arrest a judgment before one was entered is not explained; and the failure to renew the motion at the close of all the evidence was a waiver of the ruling of the court on the motion made at the close of plaintiff's evidence. McCabe & Steen Const. Co. v. Wilson, 209 U. S. 275, 28 S. Ct. 558, 52 L. Ed. 788. And a demurrer to the evidence may not be resorted to for the purpose of reaching defects in the pleadings. Howerton v. Augustine, 130 Iowa, 389, 393, 106 N. W. 941.

There appearing to be no errors in the record, the order and judgment of the court is affirmed.